# SUPREME COURT.

## In the matter of the ATTORNEY-GENERAL agt. THE CONTINENTAL LIFE INSURANCE COMPANY.

*Life insurance companies — mode of dissolution — application of attorney-general.*

The proceeding authorized by the statute of 1853 (*Laws of* 1853, *chap.* 463, *section* 17) which makes it the duty of the attorney-general (upon the report of the superintendent of the insurance department that the assets of any life insurance company are insufficient to reinsure the outstanding risks) to apply to the supreme court to decree a dissolution of such company, and a distribution of its effects, including the securities in the hands of the comptroller, is *exclusive,* and is *now* the only mode of dissolution of a life insurance company.

A stockholder or a creditor of a life insurance company cannot *now* bring an action, under the Revised Statutes, in behalf of himself and all other stockholders for the dissolution of such company, and the distribution of its assets, as such proceeding is *superseded* by the act of 1853.

*Ulster Special Term, March,* 1877.

APPLICATION by the attorney-general, pursuant to section 17 of chapter 463 of the Laws of 1853, against " The Continental Life Insurance Company " to " decree a dissolution of said company and a distribution of its effects, including the securities deposited in the hands of the comptroller."

*Mr. Charles S. Fairchild,* attorney-general, in person.

*Mr. William Barnes,* for sundry policyholders.

*Mr. J. Henry Work,* for sundry other policyholders.

*Mr. John L. Hill,* opposed to application and representing Mr. Andrews and others.

*Mr. W. Britton,* appears informally to make a statement in behalf of Mr. Grace, who was appointed receiver in an action brought in this court by John O. Hoyt, a stockholder in the company, in behalf of himself and all others stockholders, to annul and dissolve the corporation and to distribute its assets.

WESTBROOK, *J.* — The present application to dissolve " The Continental Life Insurance Company " and to distribute its effects is made by the attorney-general, and is based upon section 17 of chapter 463 of Laws of 1853, entitled "An act to provide for the incorporation of life and health insurance companies, and in relation to agencies of such companies." When the matter was originally presented to the court objection to action upon it was made upon the same ground now urged, that in an action brought in this court by John O. Hoyt, a stockholder of the corporation, in behalf of himself and all other stockholders, a judgment had been rendered dissolving the company, ordering its assets to be distributed, and appointing a receiver for that purpose; and that as the company was by such judgment already dissolved, and its assets in the hands of a receiver, no further action under the present proceeding could be had. Notwithstanding such objection this court, at special term, Mr. justice OSBORN presiding, on the 8th day of November, 1876, appointed a referee " to take the proof touching said application    *    *    *    and · to report such proof with all convenient speed." On appeal · to the general term of this court in the third department this order of the special term was affirmed, and an appeal from such order of affirmance to the court of appeals was dismissed because it was not appealable. The referee has made his examination and presented his report, and the attorney-general now moves that the (to use the exact language of section 17 of the statute of 1853) " court shall decree a dissolution of said company and a distribution of its effects, including the securities deposited in the hands of the comptroller."

In opposition to this motion it is not claimed that sufficient

cause under the act of 1853 has not been shown or does not exist, but the point made at the previous special term is repeated, and thus this question, and the only one, is squarely presented : Is the proceeding authorized by the statute under which the attorney-general proceeds (*chapter* 463, *Laws of* 1853) exclusive, or can a stockholder or a creditor of a life insurance company also proceed under the Revised Statutes (2 *Edmonds' Statutes, page* 484, *sec.* 389, *&c.*) ? The question is a grave one and its right determination is of great importance, not only to the people of this state but to those of other states as well who are also largely interested as policyholders and otherwise in corporations created and controlled by our laws.

When the Revised Statutes under which the proceedings claimed to be a bar were instituted life insurance companies were not in existence in this state. The first act authorizing their formation is chapter 308 of the Laws of 1849, and this was followed by chapter 95 of the Laws of 1851. As from time to time such companies were formed and their business increased, reaching into every part of the entire nation, it became apparent that further legislation specially adapted to them, and placing them more completely under the control of state officials, should be had. This need the act of 1853 undertook to supply. By its seventeenth section the superintendent of the insurance department is directed to examine into the affairs of any company (*see, also, sec.* 8 *of chapter* 708 *of the Laws of* 1867, *and sec.* 15 *of chapter* 902 *of the Laws of* 1869) whenever he shall suspect it of unsoundness, the section clothing him with full authority so to do, and if from such examination it shall appear to the superintendent "that the assets of any such company be insufficient to reinsure the outstanding risks, he shall communicate the fact to the attorney-general, whose duty it shall then become to apply to the supreme court for an order requiring them to show cause why the business of such company should not be closed, and the court shall, thereupon, proceed to hear the allegations

and proofs of the respective parties; and in case it shall appear to the satisfaction of the said court that the assets and funds of the said company are not sufficient, as aforesaid, the said court shall decree a dissolution of said company and a distribution of its effects, including the securities deposited in the hands of the said superintendent. The supreme court shall have power to refer the application of the attorney-general to a referee to inquire into and report upon the facts stated therein."

It is obvious, from the language of this section, that a plan for the protection of all parties interested in a life insurance company based upon the ascertainment of the condition of its affairs by a state officer whose duty it is to examine therein, has been devised, a standard by which its right to exist and continue has been declared and full provisions for its extinction and the distribution of its assets made. Are these provisions exclusive? Whilst it is true that the repeal of a statute by implication is not favored in law it would seem that the passage of a statute specially applicable to life insurance companies must supersede other and older ones passed before any such companies existed. Perhaps, however, it would be more accurate to say that a general law regulating the formation, the practical working and dissolution of such corporations — purporting to provide for them a complete system — should be deemed the only one applicable to such corporations, and that older statutes framed for other kinds of corporations should not apply, unless specially declared to be so applicable in the new act (*Excelsior Petroleum Co.* agt. *Lacey et al.*, 63 *N. Y. Rep.*, 422). This principle was evidently present to the legislative mind which framed the act of 1853. By its eleventh section portions of the old statutes are declared to be applicable to life insurance companies, and other parts are expressly said to be inapplicable. That section provides that they "shall be subject to all the provisions of the Revised Statutes in relation to corporations so far as the same are applicable, except in regard to annual statements and

other matters herein *otherwise* specially provided for." The change made in the phraseology of this section from that of section 17 in the act of 1849, and which was the first act in regard to life insurance companies passed in this state, is worthy of notice. That section made them " subject to *all* the provisions of the Revised Statutes in regard to corporations, so far as the same are applicable." But the statute of 1853, by plain and direct words, expressly excepts from the operation of the Revised Statutes those parts thereof " in regard to annual statements," and also the " other matters " which are therein " otherwise specially provided for." Why was this addition made in the act of 1853 ? Up to that time, at least, all provisions of the Revised Statutes not inapplicable were declared to be applicable, and to that period, such an action as that brought by Mr. Hoyt could have been maintained, for the. Revised Statutes did provide for proceedings by " the attorney-general, in behalf of this state," not only, but also for those by " any creditor or stockholder" of a corporation therein enumerated, in case of its insolvency or inability to pay its debts, to enjoin its further continuance in active life and to distribute its assets (2 *Edmond's Statutes*, 484, secs. 39, 40, &c.). If those proceedings could go so far as to declare the corporation dissolved, and the parties resisting this application must so claim to uphold their judgment, which is one of. actual dissolution, then it follows that the Revised Statutes provided machinery for the dissolution of a corporation, which was open alike to the attorney-general, the creditor or the stockholder, and which either could employ under the act of 1849. The statute of 1853 is, however, subsequently passed and provides a new and different mode of dissolution, unknown to the prior statutes. It can only be by the application of the attorney-general, based upon the action of the superintendent of the insurance department. Instead of the door being left open to every creditor or stockholder to bring suit, with whom so to do the attorney-general had before only equal rights, the state has devised a plan by which its own officers,

Attorney-General agt. Continental Life Insurance Co.

who are always presumed to act for the best interests of all interested, shall guard the rights of the corporation, the creditor and the stockholder. If the Revised Statutes, then, did provide for the dissolution of a life insurance company, has not the act of 1853 also given a way to the same result, which is " otherwise ? " And if it is " otherwise," has not the act of 1853 expressly declared that the old remedies are inapplicable ?

It is, it seems to me, no answer to the argument just made, to say that because the act of 1853 makes no provision for actions by creditors or stockholder to distribute its assets, that, therefore, the right to bring such suits is not taken away, and that the remedies therein given are cumulative and not exclusive. The more logical conclusion from such a premise is its precise reverse, because it gives no proper force to the fact that the dissolution of the corporation, and the distribution of its assets, are specially and completely provided for by the act of 1853, and that those provisions are " otherwise " than those of the Revised Statutes. The results to be reached by both acts are the same ; the extinction of the corporate life, and the administration upon and settlement of the estate. If, by the terms of one, several parties may alike initiate proceedings to that end, and, by the other, only one may take such action, and that for broader reasons than those before allowed, and yet embracing them, it is idle to argue that the dissolution of a corporation, and a full liquidation of its estate, has not, by the new way, been fully provided for, which must of necessity be one which is " otherwise," _i. e._, different from the old. The omission from the new statute of the right of action by stockholder or creditor to wind up the corporation, and the conferring of that power upon the attorney-general alone, who acts only upon the information of the officer who is specially charged by law with the duty of watchful care over the corporation for the interest of all, and the substitution of a new test, by which the right of the company to exist is determined, instead of furnishing evi-

dence of the cumulative character of the new remedial provisions, are, when coupled with the positive declaration of section 11 thereof, that where such new act is "otherwise," that is, changed from the old, the latter does not apply, not only controlling and convincing to show that the old remedies no longer exist, but also a positive averment of the entire abrogation thereof.

Neither does this construction do any injustice to a creditor or a stockholder. All rights and remedies necessary to protect himself alone, by action, are left open. His power to wind it up, in which many others besides himself are interested, is only taken away. When, however, public policy and the interests of all as well as his demand its death, the officers of the state alone can take its life and administer its assets. That this policy is better, wiser and safer for all is most manifest. It is not to be assumed that sworn officials will fail in duty, or if they do, they can still by the action of the aggrieved stockholder or creditor, be compelled to act. Rights of stockholders and creditors who have no knowledge thereof should not be jeopardized by suits instituted by any stockholder under the Revised Statutes, and so brought for a fraudulent and wrecking purpose by collusion with the officers of the corporation, which rights can surely be imperiled if the remedies given by the Revised Statutes still exist. The temptation so to do was too great to make every stockholder and every creditor the depositary of so great a power for mischief, and hence, it seems to me that the act of 1853 wisely provided a new method of extinction and administration by which the power which gave the life, is alone empowered to take it. When action looking to the death of the corporation becomes necessary the officials of the state will and must intervene. Until they see good cause so to do, or until the court can see good cause to compel their action, if they refuse, such remedies should not be invoked. No interest of any person nor of the general public demands it.

Since the argument of this motion, my attention has been

called to a decision made by Mr. justice PRATT, in which he has come to a conclusion which is the reverse of what has been herein enunciated. Sincere respect for my learned judicial brother has caused me to read his opinion with care, and it would be followed if my own convictions were not entirely clear. It seems to me that the object of the act of 1853, taking its plain language as the best evidence of the legislative intent which dictated it, was, among other things, to declare the only mode of the dissolution of a life insurance company through the courts; that by its provisions neither creditor nor stockholder is left unprotected, and that the state as guardian of all parties and interests, has, by such statute, expressly reserved to itself all power to act. These propositions it has been attempted in the former part of this opinion to make manifest, and if such attempt has failed, a repetition of the arguments will not add to their strength. A higher tribunal will decide honest difference of opinion, arising between inferior courts, and the method of reaching a right result in the court of dernier resort is for judges in the lower ones to give to it the aid of their judgment and of their views. It is proper to state, however, that the conclusion of judge PRATT differs from that of judge HARDIN, in *Fisher* agt. *The World Mutual Life Insurance Company* (47 *Howard Prac. Rep.*, 451), as well as from my own, the latter judge having, in an able opinion, reached the same result with myself upon the effect of the act of 1853.

Before closing this opinion allusion should be made to the order of the Brooklyn special term of February 20, 1877, by which the court upon an order to show cause granted on the day previous, decrees the superintendent of the insurance department, the attorney-general and the people, to be bound by the judgment rendered in the case of Hoyt, to which judgment allusion has been heretofore made, and directs the proceedings upon this application to be made ancillary to such judgment, and declares anew " that the said Continental Life Insurance Company is wholly dissolved and its fran-

Attorney-General agt. Continental Life Insurance Co.

chises extinguished." If the original judgment was unwarranted and unauthorized, as has been endeavored to be shown, it is difficult to see how any person other than the parties to it, can be bound by it, and how those, who were not such in the original action, and who have had no opportunity to make defense, can, on mere motion, be so brought into court as to give it jurisdiction thus summarily to conclude their rights. And when a plain statute guides and prescribes official action, it is impossible for us to see how any court can, in another action to which state officers and its people were not parties, and on the merits of which they have never been heard, change and alter such statute, and make a proceeding under it a mere tender in aid of another proceeding founded upon other statutes and instituted by other parties. The order which seeks to accomplish such objects was, it seems to me, clearly unadvised and unwarranted in law.

It follows from the views expressed that the motion of the attorney-general is granted. The order will be settled on a day to be fixed by the court, when the parties interested will be heard as to the proper person to be receiver and whose name must be inserted in the order.