[No. 15469. In Bank.—October 14, 1893.]

THE PEOPLE EX REL. A. GERBERDING ET AL., CONSTITUTING BOARD OF BANK COMMISSIONERS, UPON THE INFORMATION OF ATTORNEY-GENERAL HART ET AL., PETITIONERS, *v.* THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO ET AL., RESPONDENTS.

BANKS—INSOLVENCY—BANK COMMISSIONERS' ACT—INSOLVENT ACT SUPERSEDED.—Section 11 of the Act of March 30, 1878, commonly known as the "Bank Commissioners' Act" (Stats. 1877–78, p. 740), as amended in 1887 (Stats. 1887, p. 90), was intended by the legislature to provide for every case involving the winding up of the business of any banking corporation, and supersedes the provisions of the Insolvent Act of 1880 so far as all banking corporations are concerned.

ID.—INSOLVENCY PROCEEDINGS—WRIT OF PROHIBITION.—A writ of prohibition will be sustained to prevent the superior court from proceeding

under the Insolvent Act upon petition of the creditors of an insolvent banking corporation for an adjudication of its insolvency.

ID.—CONSTITUTIONAL LAW—JURISDICTION OF SUPERIOR COURT—SPECIAL LEGISLATION.—The "Bank Commissioners' Act" is constitutional. It does not deprive the superior court of jurisdiction in matters of insolvency, nor grant to any particular corporation any special or exclusive right, privilege, or immunity, and is not special or local legislation.

ID.—TITLE OF ACT.—The title of the "Bank Commissioners' Act" sufficiently expresses the subject of the act, and is sufficiently general in its scope. It is not necessary that the title to an act should embrace an abstract of its contents.

HEARING in the Supreme Court upon an alternative writ of prohibition issued to the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General W. H. H. Hart,* and *A. R. Cotton,* for Petitioners.

Section 11 of the Bank Commissioners' Act conflicts with the Insolvent Act of 1880, and being the last enactment repeals the Insolvent Act, if the latter ever did apply to a banking corporation. (*People* v. *Burt,* 43 Cal. 560; *Estate of Wixom,* 35 Cal. 320; *Pierpont* v. *Crouch,* 10 Cal. 316; *Sacramento* v. *Bird,* 15 Cal. 296.) Involuntary proceedings under the Act of 1880 never did include a banking corporation, nor any corporation. (See *French Bank Case,* 53 Cal. 495.) The Pacific Bank being a savings and loan bank does not come within the Insolvent Act. (See Insolvent Act of 1880, sec. 8; Stats. 1862, p. 199; Stats. 1865–66, p. 620.) The vice-president of the Pacific Bank had no authority to file an answer confessing that the bank is insolvent. (*Adams* v. *Crosswood Printing Co.,* 27 Ill. App. 313; *Stokes* v. *New Jersey Pottery Co.,* 46 N. J. L. 237; *Wheat* v. *Bank of Louisille,* 27 Am. Law Reg., N. S., 52; *Thew* v. *Porcelain Mfg. Co.,* 5 S. C. 415; *Ashuelot M. Co.* v. *Marsh,* 1 Cush. 507; *Blen* v. *Bear River Co.,* 20 Cal. 602; 81 Am. Dec. 132; *Read* v. *Buffum,* 79 Cal. 78; 12 Am. St. Rep. 136; *Gashwiler* v. *Willis,* 33 Cal. 11; 91 Am. Dec. 607.) A corporation is not bound by the unauthorized acts of its officers. (Morawetz on

Corporations, secs. 579–81.)   The ratification of *ultra vires* acts cannot be made by the board of directors. (Morawetz on Corporations, secs. 619–22.)   A ratification of an unauthorized act by the board of directors after an action is commenced or answer filed is too late, and unavailing.   (*Read* v. *Buffum*, 79 Cal. 77, 81; 12 Am. St. Rep. 136, and sections from Morawetz cited.)   Insolvency, or assignment of its property so as to disable the bank from continuing its business is a cause for forfeiture.   (*Bank Commrs.* v. *Bank of Brest*, Harr. Ch., Cooley's Ann. ed., 106, 112.)   Directors are made trustees of the depositors and stockholders for the purpose of carrying on business, and not for the purpose of winding it up and destroying its existence.   (*Bank Commrs.* v. *Bank of Brest*, Harr. Ch., Cooley's Ann. ed., 106, 112; *People* v. *Bank of Hudson*, 6 Cow. 217; Morse on Banking, sec. 760.)   The Bank Commissioners' Act, like all insurance acts for the regulation of insurance companies, is a scheme or mode provided by law for the visitation and examination of banks, and for their supervision, and for winding them up when in a condition requiring such action.   (Morawetz on Corporations, secs. 1072, 1077; *Commonwealth* v. *Farmers' etc. Bank*, 21 Pick. 543; 32 Am. Dec. 290; *Wells, Fargo & Co.* v. *Coleman*, 53 Cal. 416; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574, 580–83; *Bank Commrs.* v. *Bank of Brest*, Harr. Ch., Cooley's Ann. ed., 106; *People* v. *Bank of Hudson*, 6 Cow. 217; *Attorney-General* v. *Continental Life Ins. Co.*, 53 How. Pr. 16; *Matter of Jackson Marine Ins. Co.*, 4 Sandf. Ch. 359; *Ward* v. *Farwell*, 97 Ill. 593; *Chicago Life Ins. Co.* v. *Auditor*, 101 Ill. 82; *Chicago etc. Assn.* v. *Hunt*, 127 Ill. 259; *Atlas Bank* v. *Nahant Bank*, 23 Pick. 480.)   There is not a plain, speedy or adequate remedy in the ordinary course of law, and therefore the writ of prohibition will lie.   (See *People* v. *Stratton*, 25 Cal. 242, 246–53; *People* v. *Gold Run etc. Co.*, 66 Cal. 138; 56 Am. Rep. 80; *Yolo Co.* v. *Sacramento Co.*, 36 Cal. 193, 196; 2 Morawetz on Corporations, sec. 1041; *Attorney-General* v. *Chicago etc. R. R. Co.*, 35 Wis. 432; *People* v. *Ballard*, 134 N. Y. 269.)

*Forbes & Barnard,* for Petitioning Creditors.

Sections 4 and 11 of the Bank Commissioner's Act are unconstitutional and void. (Const., art. VI, secs. 4, 5; art. IV, sec. 25, subd. 3.) The amendment of 1887 of the act is directly in conflict with the constitution. (Const., art. I, secs. 11, 21; art. IV, sec. 25, subds. 19, 33.) The act is clearly a local and special law within the meaning of section 25 of article IV of the constitution. (See *Earle* v. *Board of Education,* 55 Cal. 494; *Omnibus R. R. Co.* v. *Baldwin,* 55 Cal. 165. See also *Ex parte Westerfield,* 55 Cal. 550; 36 Am. Rep. 47; *Ex parte Moynier,* 65 Cal. 36; *Miller* v. *Kister,* 68 Cal. 145; *People* v. *Central Pac. R. R. Co.,* 83 Cal. 410.) The title of the act amending section 11 of the Bank Commissioners' Act does not sufficiently express its contents and, therefore, the amendment to the act is unconstitutional. (See *People* v. *Parks,* 58 Cal. 639; *Wood* v. *Election Commrs.,* 58 Cal. 565.) The fact that the amendment of 1887 to the Act of 1878 is unconstitutional does not affect the validity of such act. (See *Ex parte Davis,* 21 Cal. 396.) The Pacific Bank has been carrying on a commercial banking business and is a commercial and not a savings bank. (See 1 Morse on Banks, pp. 9, 10; *Huntington* v. *Saving Bank,* 96 U. S. 338; 1 Waterman on Corporations, p. 489; Act of April 11, 1862, and amendments thereto.)

*Dunne & McPike,* and *Dorn & Dorn,* for Respondents.

The first adjudication of insolvency is not premature or void. The record in this case disclosing and confessing the insolvency on its face, the court was warranted in proceeding to the adjudication without formal proofs. (*In re Benham,* 8 Bank. Reg. 94; *In re Buchanan,* 10 Bank. Reg. 97, 102); and such adjudication could be made, and often was made, without question, in the federal courts, before the return day. (*In re Thomas,* 11 Bank. Reg. 330; *In re Republican Ins. Co.,* 8 Bank. Reg. 317, 319; *Leiter* v. *Payson,* 9 Bank. Reg. 205; *In*

*re Duncan,* 14 Bank. Reg. 18, 29.)    There was no want
of authority in the vice-president and acting president
of the bank to file the answer or confess the insol-
vency.    With the question of good faith this court
has no concern on a question of jurisdiction.    (Morse
on Banking, sec. 143; Boone on Corporations, sec. 144;
*American Ins. Co.* v. *Oakley,* 9 Paige, 498–99, 501–02;
38 Am. Dec. 561; *Savings Bank* v. *Benton,* 2 Met. (Ky.)
240; *Denton* v. *Noyes,* 6 Johns. 298; 5 Am. Dec. 237;
*Carpentier* v. *City of Oakland,* 30 Cal. 446–47.)    The
Bank Commissioners' Act does not repeal or supersede
the provisions of the Insolvent Act of 1880, so far
as those provisions apply to banking corporations.    If
it had been intended to repeal such act it would, like acts
of other states upon the subject, undoubtedly have con-
tained the feature of those acts, such as receivership, dis-
solution and winding up.    Instances of the systems of
other states, illustrating antithetically the limits of our
own system, will be found in the following citations:
(*Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574; *State*
v. *Commercial State Bank,* 28 Neb. 677; *Rinn* v. *Astor
Fire Ins. Co.,* 59 N. Y. 146; *Atlantic Trust Co.* v. *Con-
solidated Electric etc. Co.,* 49 N. J. Eq. 404.)    Upon this
record the Pacific Bank is a commercial and not a sav-
ings bank; and the savings bank question is neither
debatable nor significant.    The action of the lower
court in determining the question as to the character of
the bank is reviewable in error and not on prohibition.
(*Clark* v. *Superior Court,* 55 Cal. 200; *People* v. *Burney,*
29 Cal. 460; see, also, 1 Morse on Banking, sec. 339.)

PATERSON, J.—The Pacific Bank suspended payment
and closed its doors on June 23, 1893.    On the 11th
of August following seven of its creditors, represent-
ing an indebtedness of three thousand and sixty-three
dollars and twenty-nine cents, filed a petition in invol-
untary insolvency asking for an order to show cause
why it should not be adjudged an insolvent.    The
grounds of the petition were that the bank being in-

solvent had suffered its property to remain under attachment for more than four days; that in contemplation of insolvency it had conveyed to the People's Home Savings Bank certain real property; that it was concealing and removing a portion of its property, and that it had failed for over forty days to pay money deposited by depositors. Thereupon an order was made directing the corporation to show cause on the twenty-fourth day of August, 1893, why it should not be adjudged an insolvent debtor, and directed to surrender its estate for the benefit of its creditors in the manner required of insolvent debtors. On August 15th the vice-president of the bank filed an answer denying that the transfer of the bank property to the People's Home Savings Bank was without consideration, or to give a preference, or to hinder or delay or prejudice creditors, and denying that it was removing or concealing any of its property; but the insolvency of the bank was admitted. The answer alleged the willingness of the corporation to surrender its property for the benefit of its creditors and to comply with all the provisions of the Insolvent Act. On the day this answer was filed an order was made by the court below adjudging the corporation to be an insolvent debtor, directing schedules to be filed, and appointing Mr. McDade, who is sheriff of the city and county of San Francisco, a receiver to take charge of the property and collect debts until the appointment of an assignee. November 15, 1893, was fixed as the day upon which the creditors should appear to prove their debts and elect an assignee. The usual orders were made, at the same time, granting a stay of all proceedings against the insolvent, etc. On August 30, 1893, the board of directors of the bank held a meeting, and by resolution ratified the act of its vice-president in filing the answer, and on August 31st the court made and filed another order substantially the same as the order of August 15th. A motion was made in the court below by the petitioners herein to set aside the orders, on the ground that the court had exceeded its jurisdiction in making

the same.   This motion having been denied, an application was made here for a writ of prohibition.   An alternative writ was issued, a hearing has been had thereon, and the matter submitted for decision.

The attorney-general claimed at the argument that the Pacific Bank is a savings bank, and as such is expressly excepted from the provisions of the Insolvent Act of 1880 by section 8 thereof; that the provisions of the Insolvent Act which relate to involuntary proceedings do not include corporations; that, conceding these points to be not well taken, the order of adjudication was void because premature—made before the return day fixed by the order; that the vice-president of the bank could not consent to the adjudication, nor could the directors authorize him to do so, or ratify his act after he had done so.   But, in view of our conclusion upon another question, it is unnecessary to determine any of these contentions.

The act commonly known as "The Bank Commissioners' Act," approved March 30, 1878, provides for the appointment by the governor of three persons, one of whom shall be "an expert of accounts," to act as bank commissioners.   It is made the duty of these commissioners to visit and examine all banks, and report their proceedings to the governor, and also to ascertain the condition of such corporations, whether any of them is insolvent or unable to fulfill its obligations, and, if so, to report its condition to the attorney-general as soon as may be.   Penalties are imposed on the commissioners for failure to perform their duties, and upon officers of the bank for failure to make reports as required by the provisions of the act.   (Stats. of 1877–78, p. 740.)

Section 11 of this act, as amended in 1887 (Stats. of 1887, p. 90), reads as follows:

"Sec. 11. If such commissioners, on examination of the affairs of any corporation mentioned in this act, shall find that any such corporation has been guilty of violating its charter or law, or the provisions of this act, or is conducting business in an unsafe manner, they

shall, by an order addressed to the corporation so offending, direct discontinuance of such illegal and unsafe practices, and a conformity with the requirements of its charter and of law under this act; and if such corporation shall refuse or neglect to comply with such order, or whenever it shall appear to said commissioners that it is unsafe for such corporation as in this act mentioned to continue to transact business, they shall notify the attorney-general of such fact, who, after examination, *in his discretion,* may commence suit in the proper court against such corporation to enjoin and prohibit the transaction of any further business by such corporation; and upon the hearing of the case, if the judge of the court where the case is tried shall be of the opinion that it is *unsafe* for the parties interested, or for such corporation, to *continue* to transact business, and that such corporation or institution is *insolvent,* he shall issue the injunction applied for by said commissioners and attorney-general, who shall cause said injunction to be served according to law; and said judge shall further direct said commissioners to take such proceedings against such corporation as may be decided upon by its creditors.

" If any corporation mentioned in this act which is now insolvent, or which may hereafter become insolvent, or be thrown into liquidation by process of law, or by the order or consent of its stockholders, directors, managing officers, managers, or creditors, the affairs of such corporation shall be closed, and the business thereof settled within four years from the time it shall be declared to be insolvent or be thrown into liquidation, as the case may be, unless at the expiration of such time it shall obtain the consent, in writing, from a majority of the board of bank commissioners to continue in liquidation for a longer period. The bank commissioners shall, however, have no power to grant a continuance for such purpose for a longer period than one year at each time.

"Any corporation mentioned herein now in liquida-

tion, or that may be hereafter thrown into liquidation, shall make semi-annual reports of the condition of its affairs to the bank commissioners in the same manner as the solvent banks mentioned in this act, and in addition thereto shall state the amount of dividends paid, debts collected, and the amount realized on property sold, if any, since the previous report. The bank commissioners shall have the power, and it is hereby made their duty, to examine the condition of every such corporation in liquidation in the same manner as in the case of solvent banks, and shall have a general supervisory control of any such corporation. They shall have the power to designate the number of officers and employees necessary to close up the business of any such corporation, and fix the salaries of the same; and shall do all in their power to make such liquidation as economical and expeditious as the interests of the depositors and stockholders will admit. The bank commissioners are hereby empowered to examine into the affairs of all banks in process of liquidation at the time of the passage of this act. When any such bank shall have been for two years next preceding the passage of this act in process of liquidation, or when any such bank shall have been in liquidation for two years from the time it was declared insolvent or thrown into liquidation, the bank commissioners shall have the power to direct that the business of the bank shall be closed, and may designate a time when such closing shall be effected, and may limit the number of officers and employees, fix their salaries, and make such other orders as are necessary for the economical and expeditious administration of the affairs of the bank. If any officer or employee of any insolvent corporation mentioned in this act shall refuse to comply with the provisions of this section, or disregard or refuse to obey the directions of said bank commissioners given in accordance with the provisions of this act, such officer or employee shall be punished by a fine of not less than five hundred dollars, or by imprisonment in the county jail for not less than

C. CAL.—8

one year, or by both such fine and imprisonment, as a court of competent jurisdiction may determine."

We have no doubt that this section was intended by the legislature to provide for every case involving the winding up of the business of a banking corporation, and that it necessarily supersedes the provisions of the Insolvent Act of 1880, so far as this class of corporations is concerned. It is entirely clear that if substantial effect is to be given to the provisions of this section, the Pacific Bank cannot be put through insolvency under the provisions of the Insolvent Act. The two acts are utterly repugnant in letter and in spirit. The Bank Commissioners' Act attempts to provide a scheme for the visitation and examination of all banks, and the winding up of the affairs of such as are found to be insolvent, provided it appears that it is unsafe for the corporation to continue to transact business. The act is not as perfect in detail as it might be—a complaint which has been made in other states with respect to similar statutes—but it cannot for this reason be held invalid. It is provided, section 21, that all acts are "repealed in so far as they are inconsistent with the provisions of this act." The enforcement of the Insolvent Act would defeat the plain purposes contemplated by the Bank Commissioners' Act. The question is not so much whether the scheme provided is complete in all matters of detail, but whether the legislature intended to exempt banking corporations from the operation of the Insolvent Act, and this intention we think is clearly manifested, though not expressly stated. It is provided that if the commissioners find that the corporation has been guilty of violating its charter or law, or is conducting business in an unsafe manner, and the corporation refuses to discontinue its illegal practices, the attorney-general may commence suit in the proper court to prohibit the transaction of any further business, and wind up its affairs. The statute is essentially one of bankruptcy in relation to this class of corporations. (*Town* v. *Bank of Rover Raisin*, 2 Doug. (Mich.) 556.)

Proceedings under the Insolvent Act are of a summary nature. The assignee is required "as speedily as possible to convert the estate, real and personal, into money." If that were done in the case of the Pacific Bank it would result in the sacrifice of the assets, a thing that will not occur under section 11 of the Bank Commissioners' Act, which provides ample time for the closing of the affairs of the bank. The law is intended to secure economy in the liquidation of the affairs of a stranded bank. The bank commissioners receive no fee. Their compensation is paid by the state. They designate the number of officers and employees, and fix their salaries, and they are bound by the terms of the act to do all in their power to make the liquidation economical and as expeditious as the interests of the depositors and stockholders will admit. Under section 28 of the Insolvent Act assignees are allowed "all necessary expenses in the care, management, and settlement of the estate, and shall collectively be entitled to charge and receive for their services commissions upon all sums of money coming to their hands and accounted for by them, as follows: For the first thousand dollars, at the rate of seven per cent; for all above that sum and not exceeding ten thousand dollars, at the rate of five per cent; and for all above that sum, at the rate of four per cent." Of course the fact that large commissions are allowed and great expenses would be incurred under the Insolvent Act is no reason why the act should not be enforced; but it is a matter for consideration in determining the intent with which the legislature passed the Bank Commissioners' Act. If five creditors, representing five hundred dollars, can throw a banking corporation into insolvency, and enforce a winding up of its affairs, stockholders and creditors generally will receive very little benefit from the provisions of section 11 of the Bank Commissioners' Act. There are very few banking institutions which have passed through periods of financial distress without being in a condition of insolvency—when enough could not have been realized

from their assets in a speedy way to discharge their lia-
bilities. "At such times assets shrink and shrivel in
value, but liabilities remain unchanged. They never
diminish. Now, it is easy to see, if the court should put
forth its power at such a time merely because the cor-
poration assailed had, from such causes, become insol-
vent, it would do harm rather than good, and that
instead of giving protection to creditors it would im-
peril their safety, and instead of preserving the rights
of stockholders it would destroy the value of their
stock. . . . . Mere insolvency is not enough to induce
the court to act; but to induce it to act such a state of
insolvency must be shown as satisfies it that the corpo-
ration will not be able in a short time to resume its
business with safety to the public and advantage to the
stockholders. Such I understand to have been the
view entertained by Governor Pennington. In *Brun-
dred* v. *Paterson Machine Co.*, 4 N. J. Eq. 305, he said:
'It would be unwise and against public policy to seek
an occasion for interference with any corporation, so
long as they are striving against adversity with an
honest purpose, unless their case is hopeless or their
course of action so unfair as to jeopardize the interest of
creditors and the public.' " (*Atlantic Trust Co.* v. *Con-
solidated Electric etc. Co.*, 49 N. J. Eq. 406.) These were
the considerations which actuated the legislature in
passing this act. It was seen that if the door were left
open to a few creditors to bring suit and wind up the
affairs of a banking corporation under the summary
and expensive proceedings provided in the Insolvent
Act, financial ruin might result to every banking insti-
tution in the state. By this act no injustice is done to
any creditor or stockholder. The remarks of the court
in *Attorney-General* v. *Continental Life Ins. Co.*, 53 How.
Pr. 22, are applicable to the case before us: " His (the
creditor's) power to wind it up, in which many others be-
sides himself are interested, is only taken away. When,
however, public policy and the interests of all, as well
as his, demand its death (and that is practically what is

accomplished — *Neall* v. *Hill*, 16 Cal. 150, 76 Am. Dec. 508) the officers of the state alone can take its life and administer its assets.    That this policy is better, wiser, and safer for all is most manifest. . . . . Rights of stockholders and creditors who have no knowledge thereof should not be jeopardized by suits instituted by any stockholder under the Revised Statutes, and so brought for a fraudulent and wrecking purpose by collusion with the officers of the corporation, which rights can surely be imperiled if the remedies given by the Revised Statutes still exist.    The temptation so to do was too great to make every stockholder and every creditor the depositary of so great a power for mischief, and hence, it seems to me, that the Act of 1853 wisely provided a new method of extinction and administration by which the power which gave the life is alone empowered to take it."

We cannot agree with counsel for respondents in their contention that the sole object and purpose of the act was visitation and a report to the attorney-general by the bank commissioners, or that there is no suggestion of any element of sequestration of the assets.    The section referred to plainly provides that if the court should be of the opinion that it is unsafe for the corporation to continue to transact such business, and that it is insolvent, an injunction shall be issued, and thereupon such proceedings shall be taken against the corporation *as may be decided upon by its creditors;* and sections 18 and 19 of the act authorize the commissioners to issue subpœnas for witnesses, and maintain actions in the name of the people under the direction of the court.    These experts will be enabled to administer upon the assets of the corporation with greater safety and more assured economy than such assets could be administered upon under the Insolvent Act of 1880.

Again, it is said there is nothing compulsory about the duty devolving upon the the attorney-general; that he is clothed with discretion, and if he should fail in the proper case to bring suit the creditors and other persons

interested would have no remedy.    There is no real danger, we think, to be apprehended from such a source. It is not to be assumed that sworn officers will fail in duty.    Where, as in the case at bar, it is made to appear to the attorney-general that the banking institution has suspended payment, closed its doors and refused to pay its depositors the money that belongs to them, it is incredible that the attorney-general, sworn to the performance of his duty, should refuse to bring an action under section 11 of this act; and if he did refuse it is not clear that a *mandamus* would not lie to compel him to act. But however that may be, if the legislature did, in fact, intend to clothe the attorney-general with absolute discretion in the matter, and the effect of the act were in certain cases to prevent the creditors from proceeding to wind up the affairs of the corporation themselves without the assistance of the attorney-general, that fact alone would not invalidate the law.    The legislature has the right, we think, to provide how proceedings for the winding up of the affairs of a particular class of corporations may be institut·d, and by whom.¯ It could, if it desired, exempt—as many states have done—banking institutions from the operation of the Insolvent Act entirely; and, as a matter of fact, there never was any provision by which either a corporation or an individual could be adjudged an insolvent debtor *in involuntary proceedings* in this state until the year 1876.    The Insolvent Act of 1852 did not provide for *involuntary insolvency* proceedings.

It is claimed that proceedings against banking institutions under the Insolvent Act of 1880 are necessarily recognized by the amendment which includes corporations " now insolvent, or which may hereafter become insolvent, or be thrown into liquidation by process of law, 'or by the order or consent of its stockholders, directors, managing officers, managers or creditors"; that this language embraces banking corporations which are insolvent as the result of an adjudication declaring them so to be; but we do not so understand the matter.    The

language "which is now insolvent, or which may here-
after become insolvent," refers to insolvency in fact,
and not to adjudications of insolvency, and the reference
to "liquidation by process of law, or by the order and
consent of the stockholders," etc., does not necessarily
refer to liquidation under the provisions of the Insol-
vent Act.   If the practical effect of the winding up of the
affairs of the corporation is a dissolution, as was said in
*Neall* v. *Hill,* 16 Cal. 150; 76 Am. Dec. 508, it is equally
true that a dissolution practically leads to a winding up
of the business of a corporation, and the code provides
that upon the dissolution of any corporation the supe-
rior court may, on application of any creditor or stock-
holder, or member, appoint a receiver, with power to
collect debts, and divide the moneys and other property
among the stockholders or members.   (Code Civ. Proc.,
sec. 565.)   By the provision of section 11, referred to,
the power of the bank commissioners is simply extended
to all cases where otherwise the "liquidation" or wind-
ing up of the business of the corporation would devolve
upon receivers, or upon the directors or managers of the
corporation, who are declared to be trustees of the cred-
itors and stockholders upon dissolution, unless other per-
sons are appointed by the court to settle the affairs of
the corporation.   (Civ. Code, sec. 400.)

We see no ground for holding that the remedies re-
ferred to are cumulative, or that the powers conferred
by the Bank Commissioners' Act are merely auxiliary to
those conferred by the Insolvent Act of 1880.   The ob-
jects of the new act are to provide new limitations and
conditions, and an entirely different scheme for the
winding up of the business of banking corporations.
The power to arrest the business of the corporation is
taken from five creditors who may represent the com-
paratively insignificant sum of of five hundred dollars
in indebtedness, and placed in the hands of disinterested
experts, subject to the discretion and approval of the
court.   The wisdom of these provisions is apparent.
They offer security upon which the public may intrust

their funds and otherwise deal with banking corpora-
tions.   The act applies to both savings and commercial
banks (*Wells, Fargo & Co.* v. *Coleman,* 53 Cal. 416), and it
is well that this is so, because in their transactions they
deal with all classes, and reach a larger number of people
than any other kind of corporations.   The provisions of
the act are a bulwark against hasty action on the part
of a few timid creditors in times of financial distress,
and at all times against those who, from motives of
greed or malice, would wreck the corporation, if it were
in their power to do so, regardless of the consequences
to others.   To hold that the powers conferred by this
act are merely auxiliary to those conferred by the Insol-
vent Act, would lead to palpable incongruities.

It is claimed by counsel for respondents that the act
is unconstitutional because it contravenes the provisions
of article VI, sections 4 and 5, and article IV, section
25, subdivisions 3, 19 and 33, and article IV, section 24,
of the constitution of this state.

The superior court has not by the provisions of this
act been deprived of its power to hear and determine
matters of insolvency.   The court, having jurisdiction
of the subject matter, and the parties, is clothed with
authority to exercise all means necessary to carry its
jurisdiction into effect.   (Code Civ. Proc., section 187.)
The act simply names the experts who are to take the
place of receivers who would otherwise be appointed.
How far the acts of the commissioners may be controlled
or reviewed is a question not before us.

The act in question does not grant to any particular
corporation any special or exclusive right, privilege or
immunity, nor is it subject to the criticism that it is
local or special legislation.   It does not, therefore, con-
travene the provisions of section 25, article IV, of the
constitution.

We think that the title of the act sufficiently expresses
the subject of the act and is sufficiently general in its
scope.   Is is not necessary that the title to the act should

embrace an abstract of its contents. (*Abeel* v. *Clark*, 84 Cal. 226; *Ex parte Liddell*, 93 Cal. 633.)

It is ordered that the writ issue as prayed for. .

McFarland, J., Fitzgerald, J., Harrison, J., and Garoutte, J., concurred.