STEWART *v.* ALGONAC SAVINGS BANK.

1. EQUITY—MOTION TO DISMISS—SUFFICIENCY OF PLEADINGS.
   Well-pleaded allegations of fact in bill of complaint must be accepted as true, on motion to dismiss.

2. SAME—WHEN DISMISSAL JUSTIFIED.
   To justify dismissal of bill on ground of insufficient averments, they must not only be faulty, but incapable of amendment.

3. BANKS AND BANKING—REGULATION.
   Banks are created under law, operated subject to regulations established by law, and are charged with public interest to be safeguarded by banking commissioner.

4. SAME—INTENT—STATUTES—REPEAL BY IMPLICATION.
   Enactment of Act No. 66, Pub. Acts 1929 (3 Comp. Laws 1929, § 11898 *et seq.*), revising and codifying banking laws in comprehensive way, *held*, expressive of legislature's intent thereby to supersede former laws on said subject.

5. STATUTES—REPEAL BY IMPLICATION—GENERAL ACT—SPECIAL ACT.
   So far as special and later statute is necessarily inconsistent with general and earlier statute, provisions of former are paramount.

6. BANKS AND BANKING—RECEIVERS—STATUTES.
   Suit by depositor for appointment of receiver for bank, instituted pursuant to 3 Comp. Laws 1929, § 15334 *et seq.*, should have been dismissed; said statute, in so far as it applied to banks, having been repealed, and procedure as to appointment of receivers for banks changed, by enactment of Act No. 66, Pub. Acts 1929, § 11898 *et seq.*

Appeal from St. Clair; George (Fred W.), J. Submitted April 25, 1933. (Calendar No. 37,233.) Decided May 16, 1933.

Bill by Nathaniel L. Stewart against Algonac Savings Bank for appointment of receiver. Patrick

H. O'Brien, attorney general, intervened on behalf of Rudolph E. Reichert, State banking commissioner, to vacate order appointing temporary receiver. From order denying motion to dismiss, defendant appeals. Reversed.

*DeHull N. Travis,* for plaintiff.

*Patrick H. O'Brien,* Attorney General, and *Charles F. Cummins,* Assistant Attorney General, for intervener.

*Henry R. Baird* and *Joseph H. Clark,* for defendant.

WIEST, J. Plaintiff has a deposit in the Algonac Savings Bank, and, upon refusal by the bank to pay his deposit, filed the bill herein, on March 21, 1933, to have a receiver appointed. The court at once, and without notice, enjoined operation of the bank, appointed a temporary receiver, without bond, and ordered defendant to show cause why a permanent receiver should not be appointed. Defendant moved to dismiss the bill for want of jurisdiction and insufficient averments. The court denied the motion, discharged the temporary receiver, but continued restraint of operations by the bank officers. Defendant, by appeal, seeks our directory mandate in the premises.

The bill was filed under 3 Comp. Laws 1929, § 15334 *et seq.,* relating to equity proceedings against corporations having banking powers, and authorizing an injunction restraining an insolvent banking corporation and its officers from "exercising any of its corporate rights, privileges, or franchises, and from collecting or receiving any debts or demands, and from paying out or in any way

transferring or delivering to any person, any of the moneys, property, or effects of such corporation, until such court shall otherwise order.'' Section 15335 permits any creditor to apply for the restraint, and section 15336 authorizes the court to appoint a receiver, upon application being made at any stage of the proceedings. This statute in the main runs back to an act of June 21, 1837.

In his bill plaintiff alleged: That he has a savings account of $3,672.69 in defendant bank; that on several occasions since February 1, 1933, he has demanded payment of all or portions of such account and his demands have been refused with the exception that he received on March 1, 1933, the sum of $193.30. We quote from the bill the charge of insolvency:

"Plaintiff alleges and charges upon information and belief that the said Algonac Savings Bank is insolvent and unable to pay its just debts and obligations, and that it has not only neglected and refused plaintiff as aforesaid but also has neglected and refused to pay many other of its depositors portions of their deposits when payment thereof was demanded or requested, and that its financial condition at the present date is such that it is unable to pay its depositors any substantial portion of their deposits and is unable to pay to its other creditors any substantial portion of their claims against it.''

The circuit judge was of opinion that the mentioned allegations in the bill called upon defendant to answer and aver solvency or submit to a receiver. Defendant contends that the allegations in the bill are insufficient.

Well-pleaded allegations of fact in a bill of complaint must be accepted as true, upon a motion to

dismiss. We may assume that plaintiff was entitled to have his deposit paid on demand, and that it was the duty of the bank to so pay it, but refusal to so pay does not necessarily speak insolvency. Demands of depositors, if multiplied in number by panic, might bring a situation where a perfectly solvent bank could not meet the same by spot payments. Demand payments, regardless of number, might be ideal from the depositor's standpoint, but banks, in order to serve, must be something more than deposit boxes.

Plaintiff says in his bill that others have also been refused their deposits. How many others? Was there a run on this bank?

Thirty-five days before this bill was filed a proclamation by the governor closed all banks, and some time before the bill was filed a proclamation by the President of the United States made closing of banks for a period nation-wide.

It would serve little purpose, however, to dismiss the bill on the ground of insufficient averments unless the allegations are not only faulty but incapable of amendment. Technically, defendant may be right, but even so, dismissal of the bill would have to be tempered with leave to amend, and this would but prolong the litigation. The important question is whether plaintiff, a depositor, may, under present law, file a bill for the appointment of a receiver for defendant bank.

Plaintiff invokes the early-mentioned statute, still carried on the books, while defendant invokes Act No. 66, Pub. Acts 1929 (3 Comp. Laws 1929, § 11898 *et seq.*), entitled:

"An act to revise and codify the laws authorizing the business of banking and to establish a banking department for the supervision and regulation of

such business, and to repeal certain acts and parts of acts inconsistent with the provisions of this act,"

and urges that it repeals prior statutes inconsistent therewith, either by its express provisions or by imperative implication. Plaintiff counters this contention by claiming that provisions in the revision are permissive and not mandatory, and claims there is no conflict between the earlier statute and the revision.

Banks are created under law, operated subject to regulations established by law, and are charged with a public interest to be safeguarded by the banking commissioner.

If a depositor may throw a bank into receivership upon refusal to make spot payment, then the revised banking laws accord the banking commissioner no effective power in the premises.

Act No. 66, Pub. Acts 1929, runs true to its title, is a comprehensive revision and codification of laws relating to banking corporations, inclusive of regulations, supervision by the banking department, closing for insolvency, and consequent administration by court receivership.

Section 62 of that act (3 Comp. Laws 1929, § 11959), provides:

"If the commissioner (of the banking department) shall become satisfied that the capital of any bank has become impaired * * * or if the commissioner shall have become satisfied that any bank has refused to pay its deposits and/or obligations in accordance with the terms on which such deposits and/or obligations were incurred, if received in accordance with the provisions of this act, * * * or if from any examination made or report here provided for, the commissioner shall conclude that such bank is in an unsound or unsafe condition to transact the banking business, so that it is unsafe

and inexpedient to continue same, the commissioner of the banking department shall communicate such facts to the attorney general and, with his concurrence, application may be made by the attorney general, in behalf of the commissioner, to a court of competent jurisdiction for the appointment of a receiver of such bank.''

The section also provides:

''Said court shall immediately appoint the banking commissioner, his deputy, or one of the banking examiners in the banking department, or some other competent and disinterested person who shall have the recommendation of the banking commissioner, as receiver and shall determine his bond and prescribe his duties, and may make such further order as shall seem proper. * * * The receiver, if any be appointed, shall, under the direction of the court, take possession of the books, records, and assets of every description, of such bank, collect all debts, * * * assets and sell all the real and personal property of such bank, on such terms as the court shall direct and may, if necessary, to pay the debts of such bank, enforce all individual liabilities of the stockholders.''

The 1929 revision could not, by express clause, repeal the act invoked by plaintiff, for that earlier act is a general one relative to equity proceedings against corporations, and the particular sections invoked include injunctions against and receivers for insolvent insurance companies. The act of 1929 expressed the intention of the legislature to repeal ''acts and parts of acts inconsistent with the provisions of this act,'' and established rules and regulations special to banks and banking, under supervision of the banking commissioner, inclusive of closing and administering the affairs of insolvent banks through court action invoked and participated in

by public officers. Clearly the legislature, having singled out the subjects of banks and banking, and having legislated on the subject as a comprehensive whole, intended the revision and codification to supersede former laws on the subject. See *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505).

Had the attorney general, under communication from the banking commissioner, presented to the court contemplated action under the banking act, the holding in the *Matter of Murray Hill Bank,* 153 N. Y. 199 (47 N. E. 298), would be quite decisive, for then we would have an instance of invocation of the banking statute and its application to the case at bar. However, much stated in the opinion in that case is applicable to the case at bar. In that case a receiver was appointed under a statute applicable to all corporations, except a few mentioned, and the question was whether the banking law, enacted later under a general revision of the statutes, superseded the old general statute with reference to receiverships for banks.

As stated by the court:

"Thus it appears that the special proceeding, commenced by the directors to dissolve the bank, was based upon a general act passed in 1880, applying to substantially all corporations, while the action commenced by the attorney-general, although regulated by the code, was based upon a special act, applying to banking and kindred corporations only, passed in 1892. (L. 1880, ch. 178; L. 1892, ch. 689.) The precise question presented for decision is whether the action, although begun after the special proceeding, took priority thereto owing to the possession taken by the bank superintendent of 'the property and business' of the bank, with authority to retain possession thereof until the termination of the action brought by the attorney-general in the name of the people.

"So far as the special and later statute is necessarily inconsistent with the general and earlier statute, the provisions of the former are paramount (citing cases).

"In order to avoid a repeal by implication, which is not favored by the courts, the later act, or the particular provision is regarded as an exception to the earlier statute or the general provision. * * *

."As the statutes under consideration are not coextensive and do not both cover the same subject-matter, there can be no such pervading inconsistency between them as to indicate an intention to repeal. One is a general practice act regulating the voluntary dissolution of corporations generally and authorizing the appointment of a receiver to take possession of the property. The other authorizes the incorporation of a particular kind of a corporation, places them under the supervision of a special officer and permits him, under certain circumstances, to take possession of the property and hold it until another officer institutes legal proceedings to dissolve the corporation and distribute its assets. * * * According to the authorities cited, it seems clear that the later and special provision must control the earlier and general provision, to the extent of excepting the former from the operation of the later. This, we think, was the purpose of the legislature. * * *

"Our conclusion is that the reasonable and proper construction of the banking law, in connection with those provisions of the code which relate to the dissolution of corporations, gives priority to the proceedings of the attorney-general, and that the action of the special term in appointing receivers in the proceeding commenced by the directors was unauthorized and void."

In *People, ex rel. Gerberding,* v. *Superior Court of San Francisco,* 100 Cal. 105 (34 Pac. 492), a receiver was appointed for a bank under a general insolvency statute, and it was claimed that the bank

commissioners' act excluded jurisdiction to so appoint a receiver. The court stated:

"There are very few banking institutions which have passed through periods of financial distress without being in a condition of insolvency—when enough could not have been realized from their assets in a speedy way to discharge their liabilities. 'At such times assets shrink and shrivel in value, but liabilities remain unchanged. They never diminish. Now, it is easy to see, if the court should put forth its power at such a time merely because the corporation assailed had, from such causes, become insolvent, it would do harm rather than good, and that instead of giving protection to creditors it would imperil their safety, and instead of preserving the rights of stockholders it would destroy the value of their stock. * * * Mere insolvency is not enough to induce the court to act; but to induce it to act such a state of insolvency must be shown as satisfies it that the corporation will not be able in a short time to resume its business with safety to the public and advantage to the stockholders.' * * *

"The provisions of the act are a bulwark against hasty action on the part of a few timid creditors in times of financial distress, and at all times against those who, from motives of greed or malice, would wreck the corporation, if it were in their power to do so, regardless of the consequences to others. To hold that the powers conferred by this act are merely auxiliary to those conferred by the insolvent act, would lead to palpable incongruities."

The following holding is from *Attorney General* v. *Continental Life Ins. Co.*, 53 How. Pr. (N. Y.) 16:

"It is, it seems to me, no answer to the argument just made, to say that because the act of 1853 makes no provision for actions by creditors or stockholder to distribute its assets, that, therefore, the right to

bring such suits is not taken away, and that the remedies therein given are cumulative and not exclusive. The more logical conclusion from such a premise is its precise reverse, because it gives no proper force to the fact that the dissolution of the corporation, and the distribution of its assets, are specially and completely provided for by the act of 1853, and that those provisions are 'otherwise' than those of the Revised Statutes. The results to be reached by both acts are the same; the extinction of the corporate life and the administration upon and settlement of the estate.. If, by the terms of the one, several parties may alike initiate proceedings to that end, and, by the other, only one may take such action, and that for broader reasons than those before allowed, and yet embracing them, it is idle to argue that the dissolution of a corporation, and a full liquidation of its estate, has not, by the new way, been fully provided for, which must of necessity be one which is 'otherwise,' *i. e.,* different from the old. The omission from the new statute of the right of action of stockholder or creditor to wind up the corporation, and the conferring of that power upon the attorney general alone, who acts only upon the information of the officer who is specially charged by law with the duty of watchful care over the corporation for the interest of all, and the substitution of a new test, by which the right of the company to exist is determined, instead of furnishing evidence of a cumulative character of the new remedial provisions, are, when coupled with the positive declaration of section 11 thereof, that where such new act is 'otherwise,' that is, changed from the old, the latter does not apply, not only controlling and convincing to show that the old remedies no longer exist, but also a positive averment of the entire abrogation thereof.''

In *Feess* v. *Mechanics' State Bank,* 84 Kan. 828 (115 Pac. 563, L. R. A. 1915 A, 606), the following

observation was made relative to action in appointing a receiver for a bank:

"It is a last-resort provision and is only to be employed where there is a pressing necessity and no other adequate remedy is afforded. It should not be used where it is likely to do irreparable injury to the rights and interests of others, nor where greater injury will probably result from the appointment than if none was made. Caution is especially necessary in case of a bank, which depends so much on public confidence and. credit, and is so susceptible to injury from an imputation of mismanagement, dishonesty, or weakness. Even a rumor of weakness or wrongdoing, however unfounded, may start a run and bring discredit and ruin to a solvent bank; but where a court summarily orders a receiver to take charge of its assets and business, it necessarily impairs public confidence and paralyzes its business."

In *State, ex rel. Meyer-Kiser Bank,* v. *Superior Court of Marion County,* 202 Ind. 589 (177 N. E. 322), it was said:

"The subject of banking and similar businesses, their control and supervision, has frequently had the attention of the legislature, with the result that it continued to affirm in more positive terms its purpose of classification of banking and kindred subjects, and to exclude all outside interference with the duties imposed upon the bank commissioner, one of which is, under certain contingencies, to apply for a receiver. Prior to the 1929 act, *supra,* the exclusive right of the bank commissioner to apply for a receiver was questioned, but since that act gives him the right to exercise a discretion, among other things, to apply to the court for the appointment of a receiver, we deem the question settled that he alone has such right."

See, also, *Cartmell* v. *Commercial Bank & Trust Co.*, 153 Ky. 798 (156 S. W. 1048), where it was also said:

"Of course, if the commissioner does not act and the directors refuse to take the initiative, a court of chancery would undoubtedly have the right to appoint a receiver for the preservation of the assets of the bank and the protection of the interests of the creditors, upon a proper showing and request on the part of creditors. But the basis for the action, in a case of this character, would be the failure and refusal of the commissioner to discharge a duty which the act, under consideration, plainly imposes upon him. The act, when properly and fairly construed and administered, affords ample, full, and complete protection to all depositors and creditors of a bank, when found to be in an unsafe or insolvent condition; and, as stated, in all cases where the banking commissioner should refuse to discharge the duties imposed upon him by the act creditors would have the undoubted right to seek relief in a court of equity."

In *State, ex rel. Lofthus,* v. *Langer,* 46 N. D. 462 (177 N. W. 408), the action was to prohibit and restrain interference with the duties of the State bank commissioner, and from continuing alleged wrongful acts in determining the Scandinavian-American Bank of Fargo to be insolvent and in appointing thereover a receiver. It was said:

"The relator bank is a large banking institution in this State. * * * The powers and duties of the State examiner, and the authority of the State banking board under the laws of this State, are directly concerned.

"Further, the acts of the respondents, in suddenly closing this bank practically without warning, and installing a temporary receiver in charge thereof

without the knowledge or consent of the State examiner, * * * have occasioned unprecedented public interest and public concern, not only in this bank, but in the banks of this State concerning their solvency, concerning the operation of the banking laws of this State. * * * Upon this record it is indeed an idle assumption for the respondents to contend or assert that this cause involved merely the private rights of the relator. It not only concerns the prerogatives of the State government and the liberties of its people, but it concerns in a very large manner the sovereign powers of the officers concerned and the rights of numberless depositors.''

The so-called emergency act of 1933 (Act No. 32) was given immediate effect and signed by the governor on March 21, 1933. March 21, 1933, or the same day the emergency act was signed, the suit at bar was commenced. It is a salutary rule not to pass on the constitutionality of legislative acts unless the need to do so is imperative. If the emergency act is constitutional, then plaintiff's attorney concedes that the court was without jurisdiction and the bill should be dismissed, but contends that that act is void because in conflict with provisions of the Constitution. If the act of 1933 is valid plaintiff is out of court. If the act of 1933 is unconstitutional, then the act of 1929 is still in force, and, for the reasons pointed out in this opinion, plaintiff's suit should have been dismissed. We, therefore, find no occasion to pass upon the constitutionality of the emergency act of 1933.

The bill should have been dismissed, and our writ will issue directing the circuit judge to dismiss the bill. Defendant will recover costs.

McDonald, C. J., and Clark, Potter, Sharpe, North, Fead, and Butzel, JJ., concurred.