*In re* MINNEHAHA DRIVING-PARK ASSOCIATION OF MINNEAPOLIS, Insolvent.

Submitted on briefs May 23, 1893. Decided June 8, 1893.

**District Court may Make Calls upon Unpaid Stock of Insolvent Corporation.**

In proceedings under Laws 1881, ch. 148, upon an assignment by a corporation for the benefit of its creditors, the court may make or direct calls upon the unpaid subscriptions to stock subject to call.

**Same—Effect of Such Call.**

Such a call does not determine the liability of stockholders, but only makes due and payable whatever they may be liable for under a call, so that suit may be brought for it.

**Same—Conditions under Which a Call may be Made.**

The authority of the court to call in unpaid subscriptions depends on the necessity of applying them to payment of debts.

**Proof of Claims under Laws 1881, ch. 148.**

Under that chapter, proof of claims against the insolvent is, in the first instance, to be made to the receiver or assignee, and his decision upon them, if acquiesced in, is final.

Review of Allowance of a Claim.

> When he allows a claim, the debtor or other party interested in the assets, or their distribution, may, before the decision of the receiver or assignee has become final by acquiescence, apply to the court for, and is entitled thereupon to have, a judicial examination and decision of such claim.

Same—Practice on Such Review.

> But it must be applied for in a direct proceeding, and not as a part of, or collateral to, some other proceeding, such as a proceeding to authorize a dividend, or to call in the assets.

Appeal by Chester B. Dickens and seven others, stockholders of the Minnehaha Driving-Park Association of Minneapolis, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made October 6, 1892.

The Minnehaha Driving-Park Association was a corporation organized April 4, 1888, with a capital stock of $50,000, divided into shares of $50 each. On October 19, 1891, the corporation being insolvent, made a general assignment of its property to Wayland B. Augir, in trust for its creditors. On August 18, 1892, the assignee presented to the District Court his petition stating that the assigned property had been converted into money and was insufficient to pay the claims; that the capital stock was fully subscribed by about two hundred and twenty different persons, who agreed to pay therefor as called for by the board of directors; that only seventy per cent. upon the stock was called for by the board; but some of the stockholders had voluntarily paid their stock in full, so that only $13,335 remained unpaid; that claims against the corporation had been filed with the assignee to the aggregate sum of $8,906.73; that many of the stockholders were insolvent, or dead, or removed from the state to parts unknown, and that not more than one-half of the unpaid subscriptions were collectible. He asked the court to order a call of the unpaid balance on the stock. Dickens and his seven associate stockholders appeared and opposed the application, claiming that the power to make calls rested only in the board of directors, and not in the court; that the claims against the corporation were invalid, and were contracted in violation of the articles of incorporation, and that there was still $8,713 uncollected on calls made by the board of directors prior to the assignment.

They asked the court to refuse the application, or, in the alternative, to order the holders of claims to prove their demands in some appropriate manner, before any call should be made on the stockholders for money to pay them.

The court granted the petition of the assignee and adjudged that all of the money subscribed for the capital stock of the corporation, and remaining unpaid and collectible, was required for the payment of its valid debts, and directed the assignee to call upon the stockholders for payment, and directed them to pay within ten days after service of a copy of that order.

Dickens and his associates appealed from the order to this court.

*A. M. Harrison* and *Jamison, Penney & Hayne,* for appellants.

What we chiefly complain of in this proceeding is the action of the court in making this order, calling upon the stock subscribers to pay over to the assignee $13,335 in addition to $8,713 due upon former calls, without ascertaining that there were any debts of the defunct corporation rendering it necessary to make a call upon this fund. The board of directors, before insolvency, may make calls to meet running and operating expenses, and for the purpose of carrying on the business, but this power the court does not possess. It has only power to make calls to pay the legal debts of the corporation. The great body of the pretended claims could not have been established had they been examined into by the court. It was the duty of the court to first ascertain what the liabilities of the stockholders were, before any call could be made. *Scovill* v. *Thayer,* 105 U. S. 143; *Chandler* v. *Keith,* 42 Iowa, 99; *American Ins. Co.* v. *Schmidt,* 19 Iowa, 502; *Mann* v. *Pentz,* 3 N. Y. 415; Cook, Stock & S. §§ 111, 208; *Adler* v. *Milwaukee Pat. Brick Mfg. Co.,* 13 Wis. 63; *Citizens' Bank & T. Co.* v. *Gillespie,* 115 Pa. St. 564.

This proceeding cannot be maintained, because it is not the proceeding pointed out by our statute for enforcing a liability against stockholders for unpaid stock. This liability can only be enforced after judgment against the corporation and execution returned unsatisfied. 1878 G. S. ch. 34, §§ 9, 10, 11; ch. 76, §§ 17 to 23, incl.; Cook, Stock & S. § 200; *Johnson* v. *Fischer,* 30 Minn. 173; *Allen* v.

*Walsh*, 25 Minn. 543; *Priest* v. *Essex Mfg. Co.*, 115 Mass. 380; *Handy* v. *Draper*, 89 N. Y. 334.

The assets of the corporation must be exhausted, or clearly shown to be insufficient, before any resort can be had to the unpaid stock subscriptions. The liability of the corporation is the primary one, and that of the stockholders only secondary. *Harper* v. *Union Mfg. Co.*, 100 Ill. 225; *First Nat. Bank* v. *Greene*, 64 Iowa, 445; *Wright* v. *McCormack*, 17 Ohio St. 86; *Lane* v. *Harris*, 16 Ga. 217; *Jackson* v. *Meek*, 87 Tenn. 69; *Drinkwater* v. *Portland Marine Ry. Co.*, 18 Me. 35; *Dauchy* v. *Brown*, 24 Vt. 197.

*Byers & Augir*, for respondent.

The appellants assume that there has been no determination of the amount or validity of the claims of creditors against the insolvent company. The records in the District Court show an order of the court directing creditors to verify and file their claims with the assignee, the publication of the notice thereof, and the allowance by the assignee of claims to the amount mentioned in the petition. *In re Rees*, 39 Minn. 401; *In re Mann*, 32 Minn. 60.

If the assignee wrongfully disallows a claim, the creditor has his remedy under Laws 1881, ch. 148, § 8. If the assignee allows a claim which is unjust, any person interested can have the matter reviewed by the court directly, by proceedings under § 10. It is not the proper remedy of a stockholder in such a case to first appear upon the scene and resist the efforts of the assignee to collect the assets of the insolvent. His remedy is not a negative and obstructive one, but a direct proceeding under § 10 of the insolvent law, and that proceeding can be instituted at any time before the distribution of the insolvent's assets among its creditors. Until such direct proceeding is instituted by a party in interest, the business of collecting the assets of the insolvent and of distributing the proceeds in payment of claims allowed by the assignee is to take its usual course. *Perry* v. *Murray*, 55 Iowa, 416.

In none of the cases cited by appellants had there been any determination by an assignee or receiver of the amount or validity of the debts of the insolvent at the time the collection of unpaid stock subscriptions was sought to be enforced, except in *Scovill* v.

*Thayer,* 105 U. S. 143, but in that case the other assets of the corporation had not been exhausted.

1878 G. S. ch. 76, is not adapted to the circumstances of this case. Here the corporation has made a voluntary assignment. *Marson* v. *Deither,* 49 Minn. 423.

GILFILLAN, C. J. This is an appeal from an order of the district court making a call upon the unpaid subscriptions to the stock of a corporation, in proceedings upon an assignment by such corporation for the benefit of its creditors.

The return is somewhat short in several particulars. It does not disclose distinctly whether the assignment was under 1878, G. S. ch. 41, or Laws 1881, ch. 148, but we infer that it was under the latter. It does not make it appear very satisfactorily at what stage of the proceedings the assignee applied to the court to make or direct the call; that is, what had been done in the proceedings prior to the application. But we infer that the claims to satisfy which the call was applied for had been presented to, and allowed by, the assignee, or accepted by him as valid, and that nothing else had been done in respect to them.

When a court has charge, through its receiver or assignee, of collecting and converting the assets of a corporation, and applying the proceeds to the satisfaction of its debts, the court's call for the unpaid subscriptions to stock stands precisely as does a call made by the directors of an operating corporation. Such a call does not determine absolutely the liability of the stockholders. It has not the effect of a judgment. Its effect is to make whatever the stockholders are liable for, within the call, become due and payable, so that suit may be brought to enforce such liability. Though the order, in this case, directs the stockholder to pay the unpaid subscriptions within ten days after they shall be called for by the assignee, it has no other effect.

There can be no question of the power of the court, in insolvency proceedings, under Laws 1881, ch. 148, to direct the collection of unpaid subscriptions, and the application of the proceeds in payment of the debts of the corporation. What remains unpaid on the subscriptions are debts due the corporation, and are its assets. When it is insolvent, they constitute a fund for the payment of its

debts.    It is true that, as the primary purpose of the proceedings
in insolvency is to apply the assets to payment of the debts, the
power of the court to make or direct calls for the unpaid subscrip-
tions, and direct the enforcement thereof, must be limited to cases
where 'it is necessary to resort to that fund for the purpose, and
the extent of the call must be determined by the amounts of the
debts and of the other assets.

According to the petition of the assignee, on which the applica-
tion for the call was made, from the other assets not more than
$200 can be realized; and this seems admitted by the answer of
the objecting stockholders, and it also seems admitted that the
aggregate of the unpaid, uncalled subscriptions is $13,335, and of
the claims filed with the assignee, $8,906.73.    The assignee alleges
in the petition that so many of the stockholders are insolvent, oth-
ers being dead, and leaving no estate, and many having left the
state, and gone to parts unknown, that he believes not more than
one-half of the amounts unpaid on the stock are collectible.    The
answer does not attempt any showing as to this, but it alleges that,
upon calls made by the directors before the assignment, there is
uncollected $9,178, which is good and collectible.    In response to
this allegation the assignee states in an affidavit that, as attorney
for the corporation before the assignment, and, since then, as the
assignee, he has many times demanded payment of such unpaid
subscriptions, and has endeavored to collect all thereof, and that all
the subscribers refuse to pay, claiming that they owe the corpora-
tion and 'its assignee nothing; that nearly all whom he considers
responsible have been sued, and 'the actions are now pending; that
the amounts are so small that in only two or three cases can statute
costs be recovered; and that the costs and expenses of recovery will
absorb a large part of the proceeds.

The answer also disputes the validity of the claims filed with the
assignee, and asks that the holders thereof be required to prove
their claims, and that the court, before making a call, ascertain
what, if any, claims there are, having any legal or equitable right to
be paid by a call upon the subscribers to stock.

Assuming that a case was made for a call, we think it was
proper to make it for the whole of the unpaid subscriptions.    It
was the duty of the court, so far as it could do so, to make the call

produce enough to pay the debts of the corporation, and, in de-
termining how much it might be necessary to call for, to take into
account that a call upon some subscribers would, either from death,
insolvency, removal from the state, or other causes, produce noth-
ing, and that to enforce the call upon others would be attended
with costs and expenses large in comparison with the sums col-
lected.   It had information enough to justify it in concluding that,
to produce net the amount required to pay all the claims filed with
the assignee, it was necessary to call in all the unpaid subscrip-
tions, so far as they could be collected.

But the chief objection to the call is that the claims against the
corporation had not been ascertained and determined, and, as we
understand the appellants, that upon the application for the call
the court ought to have first proceeded to ascertain and determine
those claims, making it a part of the proceedings to determine
whether the call should be directed.

Whatever may be the proper mode for finally determining the va-
lidity of claims against the estate of an insolvent assignor, it would
seem that the orderly way would be by a direct proceeding for that
purpose alone, not making it collateral to some other proceeding,
as, for instance, to an application for an order directing a dividend
among the creditors, or to any proceeding for collecting the assets.

The consideration of how the claims shall be determined in in-
solvency proceedings requires an examination of some of the pro-
visions of the act of 1881, ch. 148.   That act was so badly drawn
that, in order to prevent it failing altogether, we have frequently
been obliged to apply to it the most liberal rules of interpretation,
and to derive from it by implication meanings which its terms failed
directly to express.   The matter of the proof of claims is one of
those upon which the terms of the act are inadequate.   It clearly
intends that a claim shall be presented to, and, in the first instance,
allowed or disallowed by, the assignee or receiver.   Section 8:
"Any creditor whose claim is disallowed in whole or in part by any
assignee or receiver appointed or selected under this act, or under
the provisions of the assignment laws of this state regarding the
assignment of debtors, may appeal from such disallowance to the
district court, and there have such claim tried as other civil ac-
tions."   The section then provides how, and within what time, such

appeal shall be taken. . What is to be done by a creditor to secure a judicial hearing in case of a disallowance is clear enough. But there is in the act no express provision securing such a hearing to the debtor, or to any person interested in the assets and their distribution, when the assignee or receiver improperly allows a claim. Yet it is hardly conceivable that the legislature intended the decision of the assignee or receiver—an administrative, and not a judicial, officer—to finally and conclusively determine the rights of any of the parties interested, except by their consent. That he should determine them in the first instance, and that his determination should become final, through the acquiescence of the parties, is well enough, and the act undoubtedly intends as much. But, as the act makes no direct provision for a judicial hearing upon claims except at the instance of a creditor whose claim is disallowed in whole or in part, the authority and duty to provide such a hearing, when asked for by others, may be found in the general power of the court over the insolvency proceedings,—a power large enough to secure their just rights to all parties interested. The power given it over the matter of proof of claims is sufficient for the purpose. Section 2 provides, among other things, for distribution among creditors who shall file releases, and "who shall come in and prove their respective claims within such time, and in such manner, as the court or judge shall direct." This, of course, is to be taken in connection with the manifest intent of the act, that the proof in the first instance is to be made to, and passed on by, the assignee or receiver, and that, if acquiesced in by all interested, his decision is to be final. The clause authorizes the court to direct what proofs shall be presented to the assignee or receiver, but the court's power in the matter of proving claims cannot stop there. It must extend to giving to parties interested (where not expressly given by the act) an opportunity to prove or disprove claims upon a judicial examination, and have such claims determined in a judicial way.

We do not know what general rules the district court has on the subject, but we shall assume that it either has general rules adequate to give a complaining party proper redress against an erroneous allowance of a claim, or, if it has no such general rule, that it would, upon seasonable application, make such order as would

give such party an opportunity for a judicial examination of the claim.

As we have said, we assume that the claims mentioned in the petition were allowed by the assignee, and, as it does not appear that any proper application has been made for a judicial hearing upon them, it is to be deemed that the allowance has been acquiesced in, and become final. An application by the assignee for leave to call in the assets is not a proceeding in which it is proper to institute what would be, in effect, an appeal from the assignee's allowance of claims.

Order affirmed.

VANDERBURGH, J., took no part.

(Opinion published 55 N. W. Rep. 598.)

