[No. 15642. In Bank. — May 15, 1894.]

S. F. LONG, PETITIONER, *v.* THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRAN- CISCO, AND J. C. B. HEBBARD, JUDGE, ET AL., RESPONDENTS.

INSOLVENT BANK—STATUTORY JURISDICTION OF SUPERIOR COURT.—The jurisdiction of the superior court in a proceeding upon the information of the attorney general, upon complaint of the board of bank commis- sioners against an insolvent bank, is derived only from the statute under which it claims to act, and its powers are limited by the statute, and in the use of this power its jurisdiction is limited and special.

ID.—INJUNCTION AGAINST FURTHER BUSINESS.—The superior court may, upon finding that a bank is insolvent, and that it is unsafe for the par- ties interested in the banking corporation to continue to transact busi- ness, adjudge and decree that the bank, its officers and agents, be enjoined and prohibited from the transaction of any further new busi- ness.

ID.—WINDING UP OF INSOLVENT BANK—POWER OF BANK COMMISSIONERS —RIGHTS OF DIRECTORS—CONSTRUCTION OF BANK ACT.—Under section 11 of the Bank Act (Stats. 1877–78, p. 740; 1886–87, p. 90), the officers of the bank who are personally cognizant of the business, though pro- hibited from doing any further new business, are allowed by the statute to liquidate the business in the interest of the creditors, in the absence of proof of fraud or dishonesty upon their part, and the superior court has no statutory authority to oust the directors of the bank from the possession of its assets, or deprive them of the management of its affairs during its liquidation, or to order the bank commissioners to settle and liquidate the affairs and business of the corporation, subject to the super- vision and control of the court.

ID.—WRIT OF PROHIBITION.—A writ of prohibition will issue from the supreme court to prevent the superior court from carrying into execu- tion an order that the affairs of an insolvent bank shall be settled by the bank commissioners under the supervision and control of the court.

CII. CAL.—29

APPLICATION to the Supreme Court for a writ of prohibition to the Superior Court of the City and County of San Francisco, and the judge thereof.

The facts are stated in the opinion of the court.

*Frank M. Stone, Reel B. Terry, Martin Stevens,* and *Dunne & McPike,* for Petitioner.

*W. T. Baggett,* for Respondents.

*A. Barnard,* for Petitioning Creditors.

*Attorney General W. H. H. Hart, amicus curiæ.*

GAROUTTE, J.—This is an original application for a writ of prohibition against the superior court of the city and county of San Francisco, state of California, Department No. 4, J. C. B. Hebbard, judge thereof, and the board of bank commissioners. The proceedings which have furnished the occasion for the application for the writ may be briefly stated as follows: An action was brought in the name of the people of the state of California upon complaint of the board of bank commissioners, and upon the information of the attorney general, against the Pacific Bank and its directors. The complaint alleged that the board of directors had willfully mismanaged the business of the corporation (giving instances of such mismanagement in detail); stated that it was unsafe for the parties interested in said corporation for it to continue to transact a banking business; that the corporation was insolvent; and prayed that the court enjoin and prohibit it from transacting any further business. The foregoing complaint was filed under the provisions of the Bank Act, found in the statutes of 1877–78, page 740, and the amendments thereto, found in the statutes of 1886–87, page 90. And there is no question but that ample authority is found in section 11 of that act to inaugurate the proceeding here outlined.

The defendant, by its board of directors, filed an

answer, wherein the allegations of the complaint as to mismanagement of its business were denied, but it was expressly admitted in said answer that the corporation was insolvent, and it was unsafe for parties interested in the corporation that it should continue to transact business. The issues raised as to the mismanagement of the business of the corporation were not tried and adjudicated upon, but a decree, termed an interlocutory decree, was entered by the court upon the admitted facts, wherein it was adjudged and decreed:

1. "That the said corporation is insolvent, and that it is unsafe for the parties interested in said corporation for it to continue to transact business, and it is ordered, adjudged, and decreed by the court, that said corporation, said Pacific Bank, be, and is hereby, enjoined and prohibited from the transaction of any further business, and it is ordered, adjudged, and decreed, that a writ of injunction issue in this action, enjoining and prohibiting said corporation, said Pacific Bank, its officers and agents, from the transaction of any further business;

2. "And it is further ordered, adjudged, and decreed by the court, that the affairs of said corporation shall be closed, that the business thereof shall be settled and liquidated under the control of the bank commissioners of this state, subject to the direction and jurisdiction of this court, and that for the purpose of such liquidation the receiver heretofore appointed in this action, Harry I. Willey, is hereby ordered and directed to deliver over to said bank commissioners all the property and assets of every kind and nature of the said corporation, and all the books, records, and papers belonging to said bank. It is further ordered and adjudged, that said bank commissioners shall, from time to time, make report to this court of their acts and doing in the liquidation of the business of said corporation, and that they shall make such report whenever directed by this court to do so; and it is ordered, that the said bank commissioners, in settling and liquidating the affairs and business

of said corporation, shall be subject to the supervision and control of this court, and that all the property and assets of said bank, and all its books and papers, shall continue and remain in the custody of this court while the business of said bank is being settled by said bank commissioners. It is further ordered, that the said bank commissioners take such proceedings against such corporation as may be decided upon by its creditors.".

As to the first paragraph of this decree, it is clearly within the power of the court to make, and clearly was its duty to make, under the admitted facts. This is conceded by all parties to the present litigation, but the remaining portion of the decree is attacked as being without the jurisdiction of the court and beyond the limitations of its power.

The court's jurisdiction in a proceeding of this chárácter comes only from the statute under which it claims to act, and its powers are limited by the statute. It is said in *Smith* v. *Westerfield*, 88 Cal. 374, 378: "Although it is a court of general jurisdiction, yet in the exercise of these powers its jurisdiction is limited and special; and whenever its acts are shown to have been in excess of the power conferred upon it, or without the limits of this special jurisdiction, such acts are nugatory, and have no binding effect upon those who have invoked its authority or submitted to its decision." And in the case of the *State Investment and Ins. Co.* v. *Superior Court*, 101 Cal. 135, it is said of the jurisdiction of the superior court, in a case involving the principle here involved: "As its jurisdiction is derived from the statute, it is limited by the provisions of the statute both as to the conditions under which it may be invoked and the extent of the judgment which it may make in the exercise of this jurisdiction." We quote from *Windsor* v. *McVeigh*, 93 U. S. 274: "Though the court may possess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then tran-

scend the power conferred by the law." As containing an interesting *resumé* of this principle of jurisdiction and the authorities supporting it, see *Thomas* v. *American Freehold Land and Mortgage Co.*, 47 Fed. Rep. 550, 556.

Section 11 of the Bank Act contains the law bearing upon the question here involved, and while the subject matter of the section is one of the gravest importance, involving vast interests, complicated details covering the liquidation of great banking institutions, and extending through a long term of years, yet the text of the statute is most meager, and, what little there is of it, most unsatisfactory and uncertain. Upon its face the statute is wholly inadequate to meet the exigencies that are bound to arise when courts are called upon under its provisions to deal with banking corporations. Its authors did not appear to understand or appreciate the importance of the question upon which they undertook to legislate, nor the difficulties surrounding its successful solution. For these reasons the court is left to grope its way in the dark upon the construction of a statute, which above every other statute, should be so written that all might understand.

It is not necessary for the court to consider the meaning of that portion of the decree framed in the words of the statute directing the bank commissioners to take such proceedings against the corporation as might be decided upon by its creditors, for no question of that character is involved in these proceedings. But the second paragraph of this decree in effect directs the bank commissioners to take charge of the assets of the corporation, and, under the control and supervision of the court, proceed to final and full liquidation of its affairs; and the justification of this portion of the court's decree in the law is the matter presented for our consideration upon the present application for this writ. For, in pursuance of this branch of the decree, the bank commissioners, in effect as agents of the court, have taken charge and control of the property and business of the bank, and, to the exclusion of its directors, are

proceeding to administer upon its effects, and conduct it through the course of liquidation.

The present proceeding is one invoked to restrain the court and its agents, the bank commissioners, from carrying out the policy outlined and declared in its decree, upon the ground that the court is acting beyond the limits of any power conferred upon it. We think the writ should issue. It is demonstrated by the authorities quoted, that the statute is the measure of the court's power, and unless the statute says the bank commissioners, in conjunction with, and under the control of, the court, may do the things they have done and are threatening to do, they are outside of the law, and their acts must cease. But the Bank Act is the only source from which the court's power to decree these things could flow, and that source of power is unable to respond when called upon to show good and legal cause for the court's action. Counsel for respondents have cited us to no law giving the court authority to administer upon, and distribute the effects of, this insolvent corporation, and we cannot find it in the statute.

In giving a construction to section 11 of this act it must be borne in mind that honest banks may become insolvent, as well as honest men, and that in the present case we have no question of fraud or dishonesty charged against the officers of this corporation. The two facts upon which the entire decree is based, and which must form its support, are that the corporation is insolvent, and that it is unsafe for parties interested in it for it to continue to transact business. Those facts are entirely consistent with a past honest administration of its business, and also consistent with a future honest liquidation of its affairs by its officers. Under such a state of facts, there is no reason why the officers of the bank should not proceed with the closing up of its affairs, and expeditiously return to the creditors their just dues. Such appears to be the evident purpose of the statute. The legislature appeared to recognize the fact that the officers of a bank, men who are personally cognizant of

the business throughout its ramifications, having full knowledge of its minutest details, were the parties who could best and soonest carry it through a successful liquidation in the interest of its creditors.

The injunction issued by the court, enjoining the further transaction of business by the bank, is in the language of the statute, and means what the statute means. The statute refers to the further transaction of a business for the conducting of which the corporation was organized. The prohibition is a restriction upon the doing of any further new business. No more money is to be received upon deposit, no more money is to be loaned. These are the objects and purposes of the statute, and nothing more. It is not contemplated that business may not be done by the officers of the bank which is absolutely necessary to the preservation of its assets, but at the same time it is contemplated that all its future acts and conduct must be directed toward the accomplishment of a single purpose, to wit: An economical and expeditious winding up of its affairs.

In this case there is no question of fraud or dishonesty upon the part of the officers of the bank, and no question of the rights of creditors petitioning the court for relief, under the peculiar conditions existing. Measured by the facts found by the court, its jurisdiction did not extend beyond a prohibition of a further prosecution of the business of the bank, for that was the limit of its statutory authority. It had no power to oust the directors of the bank from the possession of its assets, or deprive them of the management of its affairs during its liquidation; for the statute vests in the court no such power. The decree authorized by the statute deprives the corporation of the right to further transact business, and, *ex necessitate*, there is nothing left for it to do but to pass into liquidation. The statute outlines in general terms how this liquidation shall be conducted, and its entire tenor is inconsistent with the idea of placing its affairs exclusively in the hands of the bank commissioners for the purposes of liquidation. To indicate

that such was not the intention of the lawmaking power, and that a construction upon such lines is wholly unjustifiable, let us notice its provisions:

1. The section requires that the business of the bank be settled within four years from the time it is declared insolvent or thrown into liquidation, unless, at the expiration of such time, it shall obtain the consent, in writing, from a majority of the board of bank commissioners to continue in liquidation for a longer period. This provision contemplates that "it" (the bank) shall obtain the consent of the board of bank commissioners, in order that it may continue in liquidation after the expiration of the term of four years. If the matter of liquidation was in the hands of the commissioners and the court, the foregoing provision would not be found in the act.

2. It is also provided, that a bank in liquidation shall make semi-annual reports of its condition to the bank commissioners, and shall state therein the amount of dividends paid, debts collected, and the amount realized on property sold. It is apparent that this report is to be made by the officers of the bank, who have knowledge of these matters, to the bank commissioners.

3. It is also provided, that the bank commissioners shall have the power, and it is made their duty, to examine the condition of every such corporation in liquidation in the same manner as in the case of *solvent* banks, "and shall have a general supervisory control of any such corporation." These provisions of the statute have no purpose, and are wholly meaningless, if the liquidation of this bank is to pass into the hands of the bank commissioners.

4. It is further declared, that the bank commissioners shall have the power to designate the number of officers and employees necessary to close up the business and fix the salaries of the same; and shall do all in their power to make such liquidation as economical and expeditious as the interests of the depositors will admit. It will thus be observed that the commissioners are not

even given the power to select the officers and employees, but simply to fix the number and designate their salaries.

5. The act expressly confers upon the bank commissioners the same powers over all banks in process of liquidation at the date of its passage as they have over banks situated as the one here involved, yet it has never been claimed by any one, that the mere passage of the act *ipso facto* ousted the management then in possession of banks undergoing liquidation, and conferred complete and exclusive control over them upon the bank commissioners. It is evident such a thing was never contemplated by the legislature, and more than evident that such a contention could not stand in law for a moment. The foregoing citations from the statute are amply sufficient to indicate the general purpose of its provisions, and to further indicate, beyond any doubt, that the officers of the bank are not to be superseded by the commissioners in the control of its property, during its progress toward final liquidation.

As to the exact purpose intended to be accomplished by the following words found in the statute we are not prepared to say: "And shall have a general supervisory control of every such corporation." In a limited sense, the bank commissioners have a general supervisory control of all *solvent* corporations, and we are not prepared to say that this clause of the act is more than a reiteration, in a general way, of those duties of the bank commissioners toward a bank in liquidation which are stated in terms by the act itself.

There is nothing, in the conclusions we have reached in this case, opposed to the principle of law declared in the recent decision, promulgated in what is commonly known as the Pacific Bank case. (*People* v. *Superior Court*, 100 Cal. 105.) It is there decided that the statutory insolvency proceedings had no application to banking corporations, but that the Bank Act, portions of which are involved in this litigation, superseded and supplanted the Insolvent Act of 1880. Such was

the only question involved in that action, and we have no doubt whatever as to the soundness of the law there declared.   There may be isolated clauses of the opinion written in that case, as may be found in the opinions of many courts written in complicated cases, that inferentially cover more ground than the facts involved actually demanded for their determination, but those things are matters separate and apart from the principles of law involved and declared in the case, and of no binding effect upon the court.

Let the writ issue as prayed for.

HARRISON J., McFARLAND J., FITZGERALD J., and BEATTY, C. J., concurred.

Mr. Justice De Haven deeming himself disqualified did not participate in the foregoing decision.