[S. F. No. 1060. Department Two.—June 14, 1898.]

## PACIFIC BANK, Respondent, v. FRANK M. STONE, Appellant.

INSOLVENT BANK—AUTHORITY OF PRESIDENT—EMPLOYMENT OF SPECIAL COUNSEL.—The president or acting president of an insolvent bank has no authority, by virtue of his office merely, to retain special counsel in addition to the attorneys of the bank regularly employed to assist in litigation for the bank, without the sanction or ratification of the board of directors.

ID.—ACTION UPON NOTE—DEFENSE OF SPECIAL CONTRACT—QUANTUM MERUIT. Where an attorney, sued by the insolvent bank upon a note executed by him thereto, alleged in defense a special contract made with the acting president of the bank, employing him to assist as special counsel in litigation for the bank, in consideration of a surrender and cancellation of the note, without relying upon any counterclaim for the value of work and labor performed by him for the benefit of the bank, he cannot recover upon a *quantum meruit.*

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion.

Frank M. Stone, Charles A. Garter, and Frederick B. Pierce, for Appellant.

Sawyer & Burnett, for Respondent.

CHIPMAN, C.—Action on promissory note for the sum of fifteen hundred and fifty dollars.  Plaintiff had judgment, from which, and from an order denying motion for new trial, defendant

appeals on statement of the case.  Defendant pleaded a contract for professional services as attorney at law rendered plaintiff, by which "plaintiff agreed to cancel and deliver to defendant the note set forth in the complaint and to extinguish said indebtedness."  By way of cross-complaint defendant alleged what in effect was a claim on *quantum meruit,* but he withdrew his cross-complaint and waived all claim thereon.  The court found that on or about November 3, 1893, the defendant "entered into a contract with R. H. McDonald, Jr., vice-president and acting president of the corporation plaintiff, whereby defendant should render professional services to plaintiff, and that as compensation for said services said R. H. McDonald, Jr., as vice-president and acting president of the corporation plaintiff, promised and agreed that the note in controversy should be canceled and delivered to defendant"; and that defendant rendered such services to plaintiff, but said note has never been canceled or delivered to defendant.  The court further found: "That the board of directors of plaintiff never authorized said R. H. McDonald, Jr., to make said contract with defendant, and never ratified the same; and that none of the members of said board, other than said McDonald, ever knew that said McDonald had made said contract, or that said defendant had rendered said services"; that plaintiff had at that time regular retained attorneys "who had been and were employed by said board of directors"; "that on said third day of November, 1893, the said plaintiff was insolvent and in liquidation, by the decree of the court duly made and given, which decree is now in full force and effect."

It should be stated, also, that defendant's employment was especially for the purpose of testing the question as to whether "the bank directors should have charge of the settlement of the bank's affairs instead of the bank commissioners"; and defendant testified that he brought the action by which this question was settled favorably to his contention and to the bank.  It was the case entitled *Long v. Superior Court,* reported in 102 Cal. 449, as we understand the testimony, although special reference is not made to the case.  The opinion in that case recites the decree which is given in the record on this appeal and is referred to in the findings, and we think sufficiently identifies the case pending in the lower court, referred to in the transcript as being the

case which gave rise to *Long v. Superior Court, supra.* The regular bank attorneys were Messrs. Dorn & Dorn, one of whom testified that he advised the employment of defendant because he had made a study of the particular question it was desired to have settled; that they, as bank attorneys, "were not attending to these external matters," and were receiving but one hundred dollars per month for their services, and that the contract was made in one of the bank rooms. It appears that the bank closed its doors June 22, 1893, and, as we understand the history of the bank, as disclosed by the litigation in this court and as referred to in the briefs of counsel and the transcript, insolvency proceedings were begun by certain creditors, and the sheriff placed in charge of the bank as receiver in August, 1893; he was succeeded by Mr. Willey on October 10, 1893, as receiver. Later, or about that time, an action was brought by the attorney general, entitled *People, on the Relation of the Bank Commissioners v. Pacific Bank,* under the bank commissioners' act, the purpose of which was to place the bank commissioners in charge. On November 3d the court entered its decree adjudicating the bank to be insolvent and enjoining it from transacting any further business and turning over its affairs to the bank commissioners of the state, subject to the control of the court, the court retaining custody of the bank's books and papers. Immediately after this decree was entered McDonald employed defendant, who knew of all the previous proceedings in court. Defendant's services were performed after this date, and he testified that he brought the suit and was successful in it, whereby the control of the bank affairs during liquidation was restored to the corporation.

It further appears that McDonald resigned as vice-president November 18, 1893, and was succeeded by S. F. Long. It appears from the case reported in 102 California, *supra,* that director and vice-president Long was the plaintiff. It was after McDonald's resignation and Mr. Long's appointment that most of defendant's services were performed.

Appellant claims, and we think rightly, that the sole question was and is, Was the acting president of plaintiff corporation vested with authority to make the contract in question without the sanction of the board of directors?

Appellant puts the question as follows: "The board of direct-

ors had been deposed and ousted from the bank by the decree of the superior court. Here arose an emergency. The vice-president had the unqualified right, by virtue of his office of acting president, and having the affairs of the bank in charge, to retain an attorney to ascertain the rights of the board. All was confusion in the affairs of the bank; someone must act—who, then, other than the head of the institution?" He then points out, what is true, that he performed the service and was successful, and that the services were beneficial to the bank; and he then asks: "Can a board of directors sit by and take advantage of the work of one employed by their head and chief, and, because no formal resolution has been passed approving the act of that chief officer, receive the benefit of the work and labor, and repudiate the obligation to pay therefor?" When the directors were ousted McDonald shared their fate, for he was vice-president and acting president by virtue of being also a director. There was, therefore, no emergency calling for action by McDonald which did not equally appeal to all the other directors. What view might be taken of all the facts and circumstances of the case, were this an action for the value of work and labor performed, need not be considered; for defendant, having alleged a special contract, and relying alone upon that, cannot be allowed to recover on a *quantum meruit.*

The evidence fails to show that the directors had any knowledge of the specific contract pleaded, or ever authorized or ratified it. The secretary and manager of the bank brought into court the records of the directors for the fall of 1893, from which it appeared that McDonald resigned as vice-president November 18, 1893, and S. F. Long was elected in his place. The further evidence was: "Q. Is there anything in the records of the secretary, or otherwise, of the Pacific Bank that shows at any time the employment of Mr. Stone by the bank? A. No, sir; not that I know of. Mr. Stone: That is not claimed. It is not claimed that the directors employed me." It was admitted that there was no resolution authorizing the directors or Mr. McDonald to employ Mr. Stone as attorney. It appeared that there was no meeting of the directors between August 30 and November 18, 1893.

Appellant does not claim that the board ratified the contract,

except so far as their knowledge of his having rendered services, would work a ratification. But that falls far short of legal ratification, if knowledge had been proved, which was not, because there was no evidence showing that the directors had any knowledge whatever of the specific contract sued upon, or of its terms, or, that McDonald entered into it, and such knowledge cannot be presumed. It did not rest with plaintiff to show lack of ratification, but the burden was upon defendant affirmatively to show the fact. What will and what will not constitute ratification, under our code is so clearly pointed out in *Blood v. La Serena etc. Co.*, 113 Cal. 221, as to make superfluous any further statement of the law upon the subject. (See, also, *Underhill v. Santa Barbara etc. Co.*, 93 Cal. 300; *Blen v. Bear River etc. Co.*, 20 Cal. 603; 81 Am. Dec. 132.) Appellant quotes from *Streeten v. Robinson*, 102 Cal. 542, where it is said: "The authority of the president or other head of a corporation to employ an attorney when the exigencies of his company require it has been repeatedly recognized." (Citing, also, numerous other cases.) We have examined these cases beginning with *Pixley v. Western Pac. R. R. Co.*, 33 Cal 183, 91 Am. Dec. 623, and in no one of them is the doctrine laid down that the president of a corporation has by virtue of his office alone the power to bind the corporation in a transaction like the one we have here. In all the cases, as was true in the case in 102 California, *supra*, the president or other head of the corporation was shown to have been the general business manager, or he had admitted relations to the corporation from which authority might be inferred; or there was specific knowledge and acquiescence brought home to the directors; or there was a general custom or usage proven that the president or other manager had exercised like powers with the consent and acquiescence of the directors. It is true that Mr. Morse, in his work upon Banks and Banking, volume 1, section 143, lays down the doctrine that to take charge of the litigation of a bank is the function of the president by virtue of his office. But this doctrine is controverted by Mr. Thompson in his treatise on the Law of Corporations, volume 4, section 4620. The cases cited by Mr. Morse presented the question of the authority of the attorney to bring the action for, or to appear and defend the corporation, and in which the interests of third parties were involved.

In such cases the courts presume the authority to so appear. But a distinction is made where the attorney himself sues the corporation upon a contract for services rendered. An instructive case is that of *Bright v. Metairie Cemetery Assn.*, 33 La. Ann. 58. Bright was employed by the president of defendant company to conduct certain litigation, for which the attorney was to be paid as a contingent fee one-third of the amount of the tax from which he might succeed in relieving his client. There was no evidence showing the participation of the board of directors in the contract, or any act of such board to authorize their president to enter into the alleged contract in behalf of the company. The action rested where appellant appears to place his right to recover here, to wit, upon the inherent or *ex officio* powers of the president. Section 5 of the charter of the defendant company provided that "all the powers of this corporation shall be vested in a board of directors," etc., which is the statute law in this state. The court said: "It is elementary that corporate bodies are artificial beings or persons, who can act only in the mode prescribed by the law creating them, or in the manner specified in their organic law or charter. It is true that in many corporations acts of administration in their ordinary business pursuits can, and must of necessity, be performed by the president, or other authorized officer, but such authority must be provided for by special laws, or by stipulation in the charter, and must apply to well-defined acts within the essential object or objects for which the corporation was created." After pointing out the declared objects of the defendant corporation, the court said: "But this power could not possibly be extended to cover such a contract as forms the basis of this suit. The record shows that the company had a regular attorney, and, in our opinion, no authority short of the action of the board of directors could justify the president to employ and retain a special attorney, outside of usual legal business, to represent the association in a litigation of great moment and magnitude, which would be rife with vital consequences to the company, and would entail the payment of a large fee." Upon the point as to when the authority will be presumed the court said: "Plaintiff fails to recognize a necessary distinction which qualifies this rule in its application, between cases where the attorneys' authority to appear

is to be tested with reference to the effect of their professional acts on the interest of third parties, and cases when, suing for their fees, their authority or employment is specially denied by the parties whom they represented in legal proceedings.     In the latter cases, they must prove a retainer or contract, as alleged,. by legal evidence; and, if the alleged contract was with a corporation, the contract must be shown to have been made by the person or persons duly authorized thereto, for corporate bodies can act or contract only in the manner and form prescribed by law or by their charter." The case was reargued on motion for rehearing and the authorities again carefully examined, and the motion was denied.     We can perceive no reason why a bank president should be clothed with *ex officio* powers greater than those of the president of any other corporation.     As director he derives his authority from the same source as presidents of other corporations organized under the statute, and as the presiding officer his functions and powers, in the management of the corporate business, are no greater than those of any other director.     (*Wickersham v. Crittenden*, 93 Cal. 17.)  The statute provides that "a corporation may, by its by-laws, where no other special provision is specially made, provide for.  .  .  . 4. The qualifications and duties of directors.  .  .  .  . 5. The compensation and duties of its officers." (Civ. Code, sec. 303.) "The corporate powers, business, and property of all corporations: formed under this title must be exercised, conducted, and controlled by a board of not less than five nor more than eleven directors," etc.     (Civ. Code, sec. 305), and by section 308 it is provided that the president of the board of directors must be one of their number and "must perform the duties enjoined by law or the by-laws of the corporation."

We do not doubt but that authority to employ an attorney may be given to the president orally or without formal resolution by the directors, or that, where he has employed an attorney without such or any authority, the directors may orally or by conduct ratify or sanction such employment (*Pixley v. Western. Pac. R. R. Co.*, *supra*); nor do we doubt that the president may be clothed with such general management of the affairs of the corporation by resolution or by-laws of the directors, or by their acquiescence or consent, as would raise a presumption of author-

ity to act in a particular case where such proofs were made.   But in the absence of all evidence of authority to employ an attorney, as was the case here, and, in the absence of all evidence of subsequent consent or ratification, we must hold that the contract sued upon was unauthorized, and in an action based thereon he cannot recover.   The case does not present an instance of a contract *ultra vires* (such as *Main v. Casserly,* 67 Cal. 127, for example, and like cases), for the corporation here did not assume to make the contract with defendant as in that case.   It is not the case of a corporation repudiating its contract while retaining its fruits; it is the case of an officer acting wholly beyond his powers, where there is an entire failure to show that the directors had any knowledge of the contract or consented to it or ratified it.

It is recommended that the judgment and order be affirmed.

Britt, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.          Henshaw, J., Temple, J.

McFARLAND, J., concurring.—I concur in the judgment of affirmance.   The judgment of the court below on the facts of this case is right.   There are, however, some general expressions in the opinion of the commissioner about the employment of an attorney by the president of a bank which are, in my opinion, too broad to be correctly applied to the case of a solvent bank continuously engaged in the regular prosecution of its usual business.

Hearing in Bank denied.