[L. A. No. 6439. Department One.—June 6, 1921.]

W. W. KAYE, Trustee, etc., Respondent, v. T. J. METZ et al., Appellants.

[1] CORPORATIONS—RECOVERY OF UNPAID STOCK SUBSCRIPTIONS—ACTION BY TRUSTEE IN BANKRUPTCY—STATUTE OF LIMITATIONS.—
An action by the trustee of a bankrupt corporation against the stockholders to recover of each the balance alleged to be unpaid for their stock is not barred by the two years' statute of limitations provided by section 339 of the Code of Civil Procedure, on

1. When statute of limitations begins to run against unpaid balance of stock subscription, note, 1 L. R. A. (N. S.) 901.

the theory that the cause of action accrued as soon as the corporation was adjudged a bankrupt, where the call for the enforcement of which the action was begun was made by the trustee under the direction of the court less than two years prior to the filing of the complaint.

[2] ID.—CALL FOR PAYMENT OF UNPAID SUBSCRIPTIONS—ORDER OF BANKRUPTCY COURT—MANNER OF ENFORCEMENT—CODE PROVISIONS INAPPLICABLE.—Where a bankruptcy court in pursuance of a petition ordered the trustee of a bankrupt corporation to call in the entire unpaid subscription for stock if necessary for the payment of the debts, the objection that the call was invalid because the trustee did not make the assessment in the manner provided by sections 331 to 349 of the Civil Code, providing for assessments upon corporate stock and the collection thereof by sale of the stock, or, at the option of the directors, by an ordinary action at law, is without merit, since the provision for a sale would be wholly useless in the case of a bankrupt corporation.

[3] ID. — AMOUNT OF JUDGMENT AGAINST STOCKHOLDER — WHOLE AMOUNT OF UNPAID BALANCE.—In an action by the trustee of a bankrupt corporation to recover unpaid stock subscriptions, an objection that the judgment should have been rendered against each stockholder for no more than his ratable proportion of the total indebtedness, instead of the whole amount unpaid upon his stock, is not well taken.

[4] ID.—CREDITOR STOCKHOLDER—OFFSET OF CLAIM NOT PERMISSIBLE.— In an action by the trustee of a bankrupt corporation to recover unpaid stock subscriptions, it is not error to refuse to offset the claims of the respective stockholders as creditors of the corporation against the amounts unpaid on their respective holdings, since thereby a creditor stockholder would obtain a preference.

[5] SETOFF—ESSENTIALS.—In order to warrant a setoff, the debts must be mutual, and the principle of mutuality requires that the debts should not only be due to and from the same person, but in the same capacity.

[6] ID.—EXCHANGE OF STOCK FOR PROPERTY—EXCESS VALUATION— CONSTRUCTIVE FRAUD.—Where fully paid up stock has been issued in consideration of a transfer of certain property to a corporation, the rule is that where the corporation and stockholder have agreed upon a given valuation for the property, such value is binding and conclusive unless it is fraudulent in purpose or effect, but if the parties have put upon the property a valuation in excess of what they knew or believed to be its true value, it is constructive fraud upon the creditors, and the stock will be deemed paid only to the extent of the actual value of the property.

[7] ID.—RECOVERY OF UNPAID STOCK SUBSCRIPTIONS—VALUATION OF EXCHANGED PROPERTY—FINDING SUSTAINED BY EVIDENCE.—In this action by the trustee of a bankrupt corporation to recover unpaid stock subscriptions, the finding that a certain leasehold interest received by the corporation in exchange for such stock was worth no more than one-fourth of the par value of the stock and that the corporation and its officers and directors knew such fact is sustained by the evidence.

[8] ID.—EVIDENCE—ISSUANCE OF STOCK—BOOKS KEPT BY ASSISTANT SECRETARY.—Books of a corporation showing the issuance of stock kept by the assistant secretary instead of by the secretary are competent evidence and sufficient *prima facie* evidence of the facts shown by the entries therein.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Black & Black, D. S. Hammack, Alfred L. Black, E. W. Owen, C. L. Claflin, Anderson & Borton and Hammack & Black for Appellants.

Stutsman & Stutsman, Flint & Mackay, Flint & Jutten and W. W. Kaye for Respondent.

SHAW, J.—This is an action by W. W. Kaye, as trustee in bankruptcy of the J. M. S. Oil Company, a bankrupt corporation, against alleged stockholders of said corporation to recover of each the balance alleged to be unpaid to the corporation for the stock thereof belonging to him. The court found in favor of the plaintiff and gave judgment accordingly. The appeal is from the judgment. We take up the points presented in the order in which they appear in the appellants' brief.

[1] 1. The appellants contend that the action is barred by section 339 of the Code of Civil Procedure, the two years' statute of limitations. Appellants' theory is that the cause of action accrued and the period of limitation began to run as soon as the corporation was adjudged a bankrupt,

8. Admissibility of corporate books or records in action between members, or between corporation and member, note, **Ann. Cas.** 1917D, 558.

if not before. The adjudication occurred more than two years before the action was begun.

This proposition is settled against the appellants by the decision in *Union Sav. Bank* v. *Leiter,* 145 Cal. 696, [79 Pac. 441]. In that case the bank had been adjudged insolvent under the Bank Act of 1878, as amended in 1887 and 1895 (Stats. 1895, p. 172), and, as provided in that act, the directors proceeded to settle its affairs. The proceeding under the act was, in effect, a proceeding in insolvency, and the result was that ordinary actions could not thereafter be maintained against the bank, except as provided in the act. It was in legal effect the same as an adjudication in bankruptcy. (*People* v. *Superior Court,* 100 Cal. 105, [34 Pac. 492]; *Long* v. *Superior Court,* 102 Cal. 457, [36 Pac. 807]; *Crane* v. *Pacific Bank,* 106 Cal. 69, [27 L. R. A. 562, 39 Pac. 215]; *Argues* v. *Union Sav. Bank,* 133 Cal. 139, [65 Pac. 307].) The directors, in pursuance of their duties under the act, made a call for payment upon the stock subscriptions for the purpose of obtaining funds to pay the corporate debts. Upon the failure of Leiter to pay the amount called, the action was begun. It was held (145 Cal. 705), that the statute of limitations did not begin to run against such action at the time of the adjudication that the bank was insolvent, nor until such time as the directors, acting as trustees in liquidation under the act, had duly made a call for payment by stockholders upon their subscription liability, and that the action was not barred until two years from the time of making such call. This case cannot be distinguished from the case at bar. In the present case the call for the enforcement of which this action was begun was made by the trustee in bankruptcy under the direction of the court less than two years prior to the filing of the complaint. Consequently it is not barred.

[2] 2. The next objection is that the call was invalid because the trustee did not make the assessment in the manner provided by sections 331 to 349 of the Civil Code, providing for assessments upon corporate stock and for the collection thereof by sale of the stock, or, at the option of the directors, by an ordinary action at law. It has been held that these provisions of the code are so far a part of the contract of subscription that the corporate directors in

the ordinary course of its business cannot enforce the payment of the price, except by proceedings in the mode prescribed by those sections, unless the subscription contract itself dispenses therewith. (*Los Angeles Athletic Club* v. *Spires,* 166 Cal. 173, [135 Pac. 298].) This rule, however, has no application to a suit in the nature of a creditor's bill to reach the unpaid subscription as assets of the corporation for the payment of its debts. The code provisions contemplate that the directors may create a lien upon the stock for the amount of the assessment and enforce payment by a sale of the stock, or by a suit. The provisions for a sale would, of course, be wholly useless in the case of a bankrupt corporation, or one having no property subject to execution. The enforcement of a call by suit would be no greater burden upon the stockholders when begun by a trustee in bankruptcy than if begun by the corporation itself. Consequently it is held that "when the corporation is insolvent, and the directors neglect or refuse to make a call, courts of equity will disregard the formality of a call and will order the unpaid subscriptions to be paid to a receiver for the benefit of the corporate creditors." (*Welch* v. *Sargent,* 127 Cal. 83, [59 Pac. 319]; 1 Cook on Corporations, secs. 108, 207; *In re Minnehaha etc. Assn.,* 53 Minn. 423, [55 N. W. 598]; *Baines* v. *Babcock,* 95 Cal. 591, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]; *Daggett* v. *Southwest Packing Co.,* 155 Cal. 765, [103 Pac. 204]; *Edwards* v. *Schillinger,* 245 Ill. 244, [137 Am. St. Rep. 308, 33 L. R. A. (N. S.) 895, 91 N. E. 1048].) In the present case the bankruptcy court, in pursuance of a petition filed therein, ordered the trustee to call in the entire unpaid assessment if necessary for the payment of the debts. This order was made upon a contest in the bankruptcy court. We think the objection is without merit.

[3] 3. Appellants also claim that judgment should have been rendered against each stockholder for no more than his ratable proportion of the total indebtedness instead of the whole amount unpaid upon his stock. *Hunt* v. *Sharkey,* 20 Cal. App. 690, [130 Pac. 21], is relied upon in support of this proposition. In that case the trustee in bankruptcy, under the order of the court, had sold the corporate assets at public auction, including the agreements of the several stockholders to buy and pay for their stock. The total

subscriptions unpaid amounted to $30,050 and the plaintiff purchased all of them for $650. The debts of the corporation were less than half of the aforesaid balances. The plaintiff sued Sharkey for the entire balance due on his subscription. A judgment of nonsuit in the court below was affirmed on the ground that it was neither alleged nor proven that any assessment or call had ever been made upon the stockholders, either by the proper court or under its direction. The remark in the opinion that an assessment in such a case should be for an amount against each stockholder that would "ratably distribute the liability of the bankrupt estate among the subscribers to the stock" was, of course, wholly unnecessary to the decision, since no assessment had been made. The real point decided was that the bankruptcy court could not by such sale subject the stockholder to a liability for his full subscription by selling the same outright to a purchaser at public auction and allow the purchaser to sue for the whole sum regardless of the amount realized by the sale to the benefit of creditors. The case is not authority on the point here presented and the remark above quoted is contrary to the authorities. "Corporate creditors compelling stockholders to pay their subscriptions are under no obligation to see that the payments made by the stockholders are proportionately equal. A court of chancery will compel subscribers to pay in full the amount of their unpaid subscriptions if the corporate indebtedness make it necessary, leaving them to seek contribution from the other stockholders." (1 Cook on Corporations, sec. 211.) "The mere fact, however, that the whole amount of the balance due upon the complainant's stock may not ultimately be wanted, to pay the debts of the corporation, if all the other solvent stockholders should pay their ratable proportions of what still remains due upon their stock, does not necessarily render it inequitable that the receiver should compel the several stockholders to pay the balances due from them respectively, in the first instance. For if any balance should remain in the hands of the receiver, after satisfying the debts of the corporation and the necessary expenses of executing the trust, it will be distributed among the several stockholders who shall have paid in full for their stock, so as to produce perfect equality among them. And it might do great injustice to the credi-

tors of an insolvent corporation, to compel them to wait for the whole amount of their respective debts, until it could be ascertained, by a protracted litigation with all of the stockholders, how much each of such stockholders was liable and able to pay." (*Pentz* v. *Hawley*, 1 Barb. Ch. (N. Y.) 123.) It is also held that a creditor suing in equity may pursue one stockholder alone. (*Edwards* v. *Schillinger*, 245 Ill. 244, [137 Am. St. Rep. 308, 33 L. R. A. (N. S.) 895, 91 N. E. 1048].) In giving its judgment the court below provided, so far as possible, for a just distribution of the liability by requiring that the plaintiff should collect from the defendants in the aggregate a sum not to exceed the total amount of indebtedness and interest of the bankrupt corporation. The objection is not well taken.

4. The objection of appellants that the court erred in allowing interest on the amount adjudged against J. W. Jameson and I. M. Jameson is based on a misunderstanding of the terms of the judgment. The court found that the corporate debts amounted to $31,307.82 on January 28, 1913, the date of the adjudication in bankruptcy. The judgment was rendered on July 9, 1918. It declares that interest amounting to $14,129.38 had accrued on said debts, making a total of $45,437.20. J. W. Jameson owned ninety-six thousand eight hundred shares of the stock, on which three-fourths of the par value was unpaid, amounting to seventy-two thousand six hundred dollars. I. M. Jameson owned 52,150 shares, on which $39,112.50 was unpaid. The judgment did not charge any interest on either of these amounts. J. W. Jameson, it will be noted, owed more on his stock than the total amount of the debts and interest. The judgment against him was only for that amount, to wit: $45,437.20. A similar judgment was given against Smith, another stockholder, who owed more than the total debts and interest. I. M. Jameson owed only $39,112.50 on her stock, which was less than the debts and interest. The judgment against her was for $31,307.82 (being the amount of the debts without interest), together with interest thereon from January 28, 1913, but in no event to exceed $39,112.50, the amount unpaid on her stock. The other defendants owed less than the principal of the debts, and the judgment against them was for the unpaid amount without mention of interest on the debts. The appellants are in no way

injured by this method of stating the amounts adjudged against them, and it is not true that they were charged interest on the amount of their unpaid subscriptions.

[4] 5. The court did not err in refusing to offset the claims of the respective stockholders as creditors of the corporation against the amounts unpaid on their respective holdings. The unpaid amounts were assets of the corporation and as such they constituted a trust fund to be applied to the payment of its debts in general. (*Sawyer* v. *Hoag*, 84 U. S. 622, [21 L. Ed. 731]; *Scovill* v. *Thayer*, 105 U. S. 152, [26 L. Ed. 968]; *Scammon* v. *Kimball*, 92 U. S. 366, [23 L. Ed. 483]; *Sanger* v. *Upton*, 91 U. S. 60, [23 L. Ed. 220, see, also, Rose's U. S. Notes].) It is always possible in the liquidation of an insolvent estate, in contemplation of law, that the assets may not be sufficient to pay the debts. If a creditor stockholder were allowed to set off his debt against his unpaid stock liability he would receive payment in full of his debt, while other creditors would receive a *pro rata* share only, if the assets would not pay the debts in full, and even their *pro rata* shares would be less because of the setoff. A creditor stockholder would thus obtain a preference. [5] In order to warrant a setoff "the debts must be mutual and the principle of mutuality requires that the debts should not only be due to and from the same person, but in the same capacity." (19 Cyc. 894.) The trustee in bankruptcy held these stock liabilities, as above stated, as trust funds for the benefit of creditors. They are not held by him in the same capacity as would be the case if the corporation was not insolvent and had itself sued the stockholder for his subscription; hence a setoff is not permitted. This is expressly decided in the four cases last above cited.

[6] 6. The J. M. S. Oil Company was organized on April 30, 1910, with a capital stock of five hundred thousand dollars, divided into five hundred thousand shares of the par value of one dollar each. Five shares were subscribed for by each of the incorporators, namely, J. W. Jameson, J. M. Smith, William Jenkins, F. E. Borton, and T. Metz, all of whom were made directors. Thereafter, in July, 1910, the company purchased of the two directors, Smith and Metz, a forty-year lease held by them on forty acres of land in the oil region, in consideration of the issuance to Smith and Metz of four hundred thousand shares of stock of the

company to be issued as fully paid-up stock. The lease was transferred and the stock issued in accordance with this agreement. The appellants claim that this constituted full payment for the said shares and that nothing is unpaid upon the stock so issued.

The rule applicable to such transactions is thus stated in *Harrison* v. *Armour,* 169 Cal. 790, [147 Pac. 1167] : "In such cases the rule is that where the corporation and stockholder have agreed upon a given valuation for the property transferred, such value is binding and conclusive unless it is fraudulent in purpose or effect. But if the parties have put upon the property a valuation in excess of what they knew or believed to be its true value, this is a constructive fraud upon the creditors and the stock will be deemed paid only to the extent of the actual value of the property received in exchange for it." The same doctrine was stated in *Herron Co.* v. *Shaw,* 165 Cal. 674, [Ann. Cas. 1915A, 1265, 133 Pac. 491], and the court added: "It is the value of the property in the condition it is in at the time of the exchange, the value as known to the parties and as they honestly believe it to be, that determines the liability, at least where there is no subsequent increase in value nor any intentional fraud. The parties may believe that the property will eventually rise to a value far above that at which it is exchanged, and they may willingly accept the hazard in view of the expected gain, but they have no right to demand that the creditor shall share the risk with them, in effect become their partner with no share in the profits, and lose his recourse on them if their speculation proves a bad one." In the last case the court had found that the directors believed that the property could and would be developed so that eventually its value would exceed the amount at which it was taken in exchange for stock, although they did not believe that it was worth at the time of the exchange more than one-tenth of that amount. (See, also, *Hasson* v. *Koeberle,* 180 Cal. 363, [181 Pac. 387].)

[7] On this point the court found the making of the exchange as above stated and that "at all of said times the said corporation and the officers and directors thereof knew and believed that said leasehold interest and said appurtenances above described . . . was actually worth no more than the sum of one hundred thousand dollars; . . . that

at none of said times did said corporation, its officers or directors, have any reasonable ground for believing that said leasehold interest above referred to and appurtenances were worth or had a value, actual or otherwise, of four hundred thousand dollars, or any sum in excess of one hundred thousand dollars.'' The appellants claim that these findings are without support in the evidence. It must be conceded that the evidence on the subject is not as full and complete as might have been desired; but, on the other hand, it is to be said that full and complete evidence on a subject of this character can seldom be obtained. The only one of the directors who was examined as a witness was J. W. Jameson. He testified that at the time of the transaction he believed the leasehold property was worth the sum of four hundred thousand dollars and even more, but he based this belief on his opinion that by development it would produce a profit from the pumping of oil therefrom in excess of four hundred thousand dollars. Testimony of other witnesses familiar with the locality and with the business of oil production was given to the effect that the property was worth no more than one hundred thousand dollars and probably less than that amount under the circumstances then existing in that vicinity and in the oil business. It was also shown that all of the directors, including Smith and Metz, the holders of said lease, were present at the meeting of the directors at which the transaction was closed, and that immediately after the passage of the resolution authorizing the purchase of said lease by the corporation for said amount of stock the same directors passed another resolution that the remaining one hundred thousand shares of stock of the company should be placed on the market at twenty-five cents a share. This was done accordingly and a large part of the one hundred thousand shares was sold at that price. The greater part of the stock in question here was the stock originally transferred to Smith and Metz in exchange for said lease. It had been acquired afterward by the appellants with knowledge of all the circumstances. The conduct of these parties in immediately putting the remaining stock on the market at twenty-five cents a share was a clear indication that they then believed that the stock already disposed of to Smith and Metz had no real value above that amount. It is true that Jameson testified that it was necessary to sell at that price in order to raise the

money with which to develop the property and that this proceeding was not an unusual one in the oil business. It still remains true, however, that the court may well have inferred from this circumstance that the directors, all of whom consented to this sale at the reduced price, did not believe that the stock had a greater value. We are, therefore, of the opinion that the finding is sustained by the evidence and that under the doctrine above stated it must be deemed paid up only to the extent of one hundred thousand dollars, or one-fourth of the par value.

[8] 7. It is contended that the findings that I. M. Jameson held 52,150 shares of the stock of the corporation is not sustained by the evidence. The books kept by the company were introduced in evidence. It appears that she had an office in which she carried on business, that this office was also used as the office of the corporation in which its books were kept, and that she was somewhat familiar with its affairs. These books show the issuance to her of more than that number of shares of the so-called ''Treasury stock'' at the price of twenty-five cents a share, and a payment by her of a part of the price. The principal objection as to the effect of this evidence seems to be that the books were kept by one Rose, who was not the secretary of the corporation, and that, therefore, the entries in the books were not competent evidence. The evidence shows, however, that he was the assistant secretary and acted in that capacity in keeping the books and making the entries therein. It is obvious that they have the same sanction as if the secretary had personally made the entries. They were competent evidence and sufficient *prima facie* evidence of the facts shown by the entries therein. (1 Cook on Corporations, sec. 55.)

No other points are presented. No brief has been filed on behalf of the appellant Hubbard. We find no sufficient ground for a reversal.

The judgment is affirmed.

Olney, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Shurtleff, J., who did not vote.