HAROLD EVERHEART v. THE U. S. INVESTMENT & REDEMPTION COMPANY.

1. The unpaid subscriptions to stock are parts of the trust fund, including all other property of a corporation, upon which creditors have a lien prior to that of shareholders.
2. Various methods are adopted in other jurisdictions to reach these assets, but in Ohio the creditor's suit is favored, and not only may unpaid subscriptions be reached, but also the statutory double-liability enforced, in such a suit.
3. Query: Whether the same method may be pursued in reaching unpaid subscriptions against resident stockholders of a foreign corporation to pay local debts, where the action does not adjudicate the affairs of a corporation nor attempt to wind up its business? Certainly an individual creditor may proceed against an individual stockholder.

HOSEA, J.

Motion to strike from files, amended petition, etc.

The question involved in this motion has reference to the proper method to be pursued to reach, on behalf of creditors, the unpaid subscriptions of stockholders upon their stock.

The amended petition seeks to make the delinquent stockholders parties, and is substantially a creditor's bill to subject the assets of the company in Ohio, as a trust fund, to the payment of debts.

The motion is based upon the theory that the amended petition is an interference with procedure proper to be taken by the receiver; that the stockholders are not necessary nor proper parties; and that the suit would be thus converted into one for the dissolution and formal winding up of the company—which can only be done in the parent state of the company—West Virginia.

It is fundamental law that the capital stock and other property of a corporation is a trust fund for its debts, and creditors have a lien or right of priority in relation thereto over shareholders.

The unpaid subscriptions to stock are parts of this trust

fund held by shareholders, *cum onere,* subject to all the equities that attach to it.   If the directors do not assess and collect-in the subscriptions, equity will interfere and make the assessment by ordering the shareholders to pay the amount severally assessable against them, to whomever may be made the custodian of the fund.   13 Wisc., 57, *Adler* v. *Brick Co., 30* Fed. Cas. 179944.

In some jurisdictions the method indicated by the motion here, is pursued, namely, for the receiver to procure an order on the stockholders to show cause and, on the return day, for the court, upon hearing, to grant or refuse an order of assessment (55 N. J. Eq., 396) and for the receiver or assignee to bring independent suits against those liable under the call (53 Minn., 423).

But these methods are not favored in this state, where the money agreed to be paid in is regarded as part of the trust fund and is reached directly by a creditor's bill against equitable assets.   11 Ohio, 273, *Meiers* v. *Turnpike Co.;* 13 Ohio, *197, Meiers* v. *Turnpike Co.; 17 Ohio, 187, Henry* v. *Railroad.*

In 20 Ohio State, 190, *Warner* v. *Callender,* the court holds not only that the unpaid subscription may thus be reached in a creditor's suit, but that the statutory liability may also be combined; and this principle is affirmed in 53 Ohio State, 534, *Peter* v. *Foundry & Machine Co.*

In 57 Ohio State, 486, it is pointed out that an action by a receiver against a stockholder to recover unpaid subscriptions to stock is a legal action and consequently subject to the rigid rules governing actions at law; and contrasts the more comprehensive and direct method of procedure by creditor's bill in a suggestion on this point to the law-making power, citing Smith on Receiverships, 174.

In 61 Ohio State, it is held that the ten per cent. required to be paid in upon incorporation, but in fact not paid, is an equitable asset that can be reached by a creditor's bill, in addition to stockholder's liability.

These authorities are conclusive as to the method of procedure against Ohio corporations, and there would seem to be no inherent reason why a suit of this nature against

stockholders of a foreign corporation residing in Ohio, is not a proper one, where, as in the present case, the purpose of the suit is to subject assets within the jurisdiction to the payment of debts and does not involve the integrity of corporate franchise or a winding up of the corporation as such.

In 65 Ohio State, 321, *Kulp* v. *Fleming,* the question of the power of an Ohio court to deal with a foreign corporation is somewhat discussed and the language of the opinion might, at first reading, seem to be adverse to the proposition involved in the case at bar, but, upon due consideration, I am led to the opposite conclusion. The suit was by a single creditor against a single stockholder of a Kansas corporation to enforce his double liability, and the suit was sustained. The court says:

"It being thus determined that the liability is contractual, and that it is several, and that the creditor first bringing action obtains a prior lien with which other creditors may not interfere, we see no reason why it can not be enforced against a stockholder individually, in Ohio, by action against him alone. True, our method of enforcing the liability of stockholders is by a proceeding in the nature of a suit in equity which contemplates the bringing in of the corporation, of all the creditors, and of all the stockholders, and a decree which will adjust and finally settle the rights and liabilities of the parties. * * * But our courts have no jurisdiction to adjudicate the affairs of a foreign corporation, and any attempt to wind up its business by a comprehensive decree in our courts would be futile.

"Whether, when it is shown that there are other stockholders residing in Ohio, the plaintiff might properly make them parties and maintain a suit against all that might be served, we need not inquire, for no such fact appears in the present case."

It is to be noted that the question related solely to the double liability imposed by statute, and the holding of the court is: that where by the laws and policy of the parent state such obligation is regarded as a contractual one (as also in this state) it may be enforced. But, as said by the

learned counsel who contested the proposition in the case cited:

"In considering the question of liability of stockholders for the indebtedness of a corporation, it should be borne in mind that the liability of stockholders for unpaid stock is an entirely different thing from double liability or the superadded liabilities to an amount equal to the amount of stock owned.

"The liability of a stockholder to creditors for the amount remaining unpaid on his stock existed at common law and might be subjected by any creditor to the payment of his claim."

The "proceeding in the nature of a suit in equity," employed in Ohio, is based upon the principle of avoiding a multiplicity of suits, and is made practicable because the corporation is (usually) a creature of our law and the stockholders are principally residents of Ohio.   65 Ohio State, 339.

In the present case, all these conditions exist, except that the corporation is technically the creature of another state; yet, as a matter of fact, it is an organization of our own citizens who obtained a foreign charter presumably to avoid double liability, but doing business solely in Ohio.

Granting that our courts would have no jurisdiction to entertain proceedings to wind up a foreign corporation, and make a complete settlement of its affairs, yet I do not perceive any controlling reason why the essential principles declared and established in the Ohio cases above cited can not be properly extended to a suit by Ohio creditors to subject the assets of the corporation in Ohio to the payment of debts.   It is simply a logical extension of the "Ohio idea" as to methods of procedure, to several creditors where the Supreme Court has sustained it as to one.

If there could be any objection to this course, it can properly come only from the defendants; but they are not objecting.   The motion is by a creditor, who, if the rigid rule he invokes were enforced, would have no right to intervene.   The referee's report on file, and the supplemental answer and cross-petition of the defendant company, gives

all the facts necessary, and the amended petition of plaintiff brings in the laws of West Virginia as a guide of action. To set all this aside and give power to the receiver, who is a mere custodian of the fund, to begin a multiplicity of suits, *de novo,* would create additional expense to no purpose. The motion will be denied.

Motion denied.

*Harrison & Aston,* for plaintiff.
*Louis J. Dolle,* for defendant.